IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACQUELYN D. AJOSE, ) | |
| ) | NO. 3:14-CV-1707 |
| Plaintiff, ) | |
| v. ) | JURY DEMAND |
| ) | |
| INTERLINE BRANDS, INC., ) | JUDGE KEVIN H. SHARP |
| ) | MAGISTRATE JOE BROWN |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

### I.   PRELIMINARY STATEMENT

This memorandum is submitted in support of Defendant's contemporaneously filed Motion to Transfer Venue pursuant to 28 USC § 1404(a). As detailed in Interline Brands, Inc.'s ("Interline") separately and contemporaneously filed Motion to Dismiss, Plaintiff, Jacquelyn D. Ajose ("Plaintiff") commenced this case, alleging tort claims and four other causes of action relating to an allegedly defective "Toilet Connector" distributed by Interline throughout the United States under the DuraPro brand name. *See generally* Complaint ("Compl.") [D.E. 01]; *see also generally* Motion to Dismiss [D.E. 63]. In the Motion to Dismiss, Interline respectfully requests the Court to dismiss the Complaint for failing to state claims upon which relief can be granted. However, the Court need not even reach the merits of the Motion to Dismiss because, as explained in more detail below, this case should be transferred to the more convenient forum of the United States District Court for the Middle District of Florida ("Middle District of Florida") pursuant to 28 U.S.C. § 1404.

1

## II.     ARGUMENT

This Court possesses ample discretion under 28 U.S.C. § 1404(a) to transfer this case to a more convenient forum.  Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *Bunting ex rel. Gray v. Gray*, 2 F. App'x 443, 448 (6th Cir. 2001).  Congress' purpose in designing this remedial statute was to "prevent the waste of 'time, energy and money,' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 613, 616 (1964).

In determining whether a transfer of forum is appropriate under Section 1404, courts examine a variety of factors, including: (1) the plaintiff's choice of forum, (2) the location of non-party and party witnesses, (3) the availability of process to make reluctant witnesses testify, (4) the residence of the parties, (5) the location of sources of proof, (6) the location of events that gave rise to the dispute, (7) the existence of administrative difficulties resulting from court congestion, (8) whether there is a local interest in having localized controversies decided at home, and (9) the relative familiarity of both venues and the governing laws.  *Aegis Scis. Corp. v. Millennium Labs., Inc.*, No. 3:11-cv-00294, 2011 WL 3420642, at *2 (M.D. Tenn. Aug. 4, 2011) (Sharp, J.); *Seyi-America, Inc. v. Stamtec, Inc.*, No. 3-13-0461, 2013 WL 6096794, at *5 (M.D. Tenn. Nov. 20, 2013) (Sharp, J.) (citing *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) and *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002)).  The court may also consider "public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

The aforementioned factors weigh heavily in favor of transfer. This action has no meaningful connection to Plaintiff's chosen forum. As discussed below, if this case is not transferred from the United States District Court for the Middle District of Tennessee ("Middle District of Tennessee"), it will undeniably waste time, energy and money and cause inconvenience and expense to the Court, the litigants, and third-party witnesses—flying in the face of the very purpose of 28 U.S.C. § 1404(a).

### A.  This Action Could Have Been Brought in the Middle District of Florida.

In addressing a motion to transfer venue under Section 1404(a), the Court must first determine whether the case *could* have been brought in the proposed transferee forum. *Aegis Scis. Corp.*, 2011 WL 3420642, at *2 (Sharp, J.). Here, Plaintiff's complaint undeniably could have been brought in the proposed transferee forum, the Middle District of Florida, because: (1) Defendant Interline has its principal place of business in Jacksonville, Florida; and (2) Interline regularly engages in business in the State of Florida. Exhibit A, Affidavit of Joseph Cangelosi, III ("Aff."), ¶¶ 6-7; Compl. at ¶ 15; 28 U.S.C. § 1391(b); Fla. Stat. § 48.193(1)(a)(1).

### B.  The Middle District of Florida is More Convenient and Less Costly For the Witnesses.

This Court has recognized that the convenience of the witnesses factor is often the most important when engaging in a transfer analysis. *Seyi-America, Inc.*, 2013 WL 6096794, at *6 (Sharp, J.); *Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (transferring venue where the majority of likely witnesses in the case, including both non-party and party witnesses, were located outside of Tennessee). This factor strongly weighs in favor of transfer here as Interline, Interline's relevant employees, and other key third-party witnesses are located in the Middle District of Florida, hundreds of miles away from the Middle District of Tennessee. Aff. at ¶¶ 7-8.

3

At least seven third party witnesses, all located in the Middle District of Florida, are believed to have information relevant to Plaintiff's claims. Aff. at ¶ 8. These seven witnesses are former Interline employees, who are now outside of its control, including:

- John Ouyang (General Manager of Global Sourcing Business Development – employed at Interline from July 5, 2006 through April 25, 2014). Mr. Ouyang is likely to have relevant knowledge regarding Interline's overseas sourcing activities and knowledge of import manufacturers during the time of his employment at Interline.

- William Pray (former CEO/President of Interline's predecessor who took over responsibility for merchandising when the predecessor became Interline, including as a Senior Vice President and Chief Merchandising Officer – employed at Interline or its predecessor from March 6, 1978 through July 18, 2011). Mr. Pray is likely to have general knowledge of Toilet Connectors and manufacturer history, and other aspects of the company's business operations during the time of his employment.

- Anthony Scott (various positions at Interline, including Vice President of Merchandising – employed at Interline from June 16, 2003 through July 29, 2014). Mr. Scott is likely to have general knowledge of Toilet Connectors, manufacturer history, and knowledge regarding Interline's domestic merchandising operations.

- Pamela Maxwell (VP of Marketing and Pro Contractor Sales — employed at Interline or its predecessor from January 8, 2001 through February 5, 2010). Ms. Maxwell is likely to have relevant knowledge regarding Interline's sales and marketing of its products, including Toilet Connectors, to professional contractors and other end-markets.

- Robert Simon (VP of Supply Chain — employed at Interline or its predecessor from March 1, 1993 through September 3, 2002). Mr. Simon is likely to have relevant knowledge regarding the supply chain for the Toilet Connectors during the time of his employment at Interline.

- Peter Timmins (Products Manager, Rough Plumbing and Merchandising Manager — employed at Interline or its predecessor from May 11, 1998 through January 13, 2006). Mr. Timmins is likely to have relevant knowledge regarding the sourcing of the Toilet Connectors sold by Interline during the time of his employment at Interline.

- Chuck Miller (Merchandising Manager — employed at Interline or its predecessor from March 20, 1989 through June 21, 2001). Mr. Miller is likely to have relevant knowledge regarding sourcing of the Toilet Connectors during the time of his employment at Interline.

Because the Court would lack the power to subpoena these witnesses for trial, and Interline no longer controls these witnesses, this case should be transferred to the Middle District of Florida, where these witnesses would be subject to that court's subpoena power. *Flight Solutions, Inc. v. Club Air, Inc.*, No. 3:09-cv-1155, 2010 WL 276094, at *4-5 (M.D. Tenn. Jan. 14, 2010) (transferring venue where four nonparty witnesses lived outside of Tennessee); *Oakley*, 2010 WL 503125, at *4.

Moreover, convenience of the parties weighs in favor of transferring venue. While Plaintiff alleges without any supporting facts that "[a]ll of the witnesses and documents related to the import of these defective Toilet Connectors are located in Tennessee," Compl. at ¶ 12, nothing could be further from the truth. Substantially all of the Interline representatives who may have knowledge relevant to the issues raised in the Complaint, including the import of these

Toilet Connectors, are based in Interline's headquarters in Jacksonville, Florida, including: Mark Allen (Senior Director of Global Sourcing), Susan O'Brien (Director of Merchandising, Hardware, Plumbing, and Appliances), Joseph Cangelosi, III (Senior Quality Assurance Manager), and Robin Tilton (Plumbing Products Manager). Aff. at ¶ 7. The Interline employees at Interline's regional distribution facility in La Vergne, Tennessee and Interline's smaller professional contractor showroom in Nashville, Tennessee—which are just two of more than 60 such distribution centers throughout the United States and Canada (including two within 25 miles of Philadelphia, where this Plaintiff resides)—would only have knowledge about the distribution of Toilet Connectors into and from those facilities. Aff. at ¶¶ 9, 11-12. None of those Interline employees in Tennessee were involved in the decision-making regarding the sourcing of the Toilet Connectors from Interline's suppliers or their manufacturers in China, and none are likely to have relevant information regarding Plaintiff's claims. Aff. at ¶ 11.

Further, as Plaintiff has no connection to Tennessee, it would appear that Tennessee is not even a convenient forum for her to litigate this case. Compl. at ¶ 13. Indeed, Plaintiff resides in Philadelphia, suffered injury in Philadelphia and, presumably, hired contractors based in Philadelphia to install what is alleged to be Interline's product. It simply makes no sense why Plaintiff brought suit in the Middle District of Tennessee in the first place. It is entirely possible that Plaintiff, with the advice of counsel, chose Tennessee solely out of a misunderstanding of the facts. But even if that is the case, this Court should not sanction that mistake or perpetuate this error by allowing this litigation to remain pending in the wrong forum.

To force Interline to litigate this case in the Middle District of Tennessee, where it clearly does not belong, would be excessively inconvenient, costly, and a waste of time and resources. This inconvenience and wastefulness is precisely the type of problem that Section 1404(a) seeks

6

to avoid by permitting transfer of venue to a more convenient forum. Here, that more convenient forum is the Middle District of Florida.

### C. Relevant Evidence is Located within the Middle District of Florida.

Another factor courts consider in determining whether to transfer an action is whether evidence is more conveniently accessible in the proposed transferee forum.[1] *Seyi-America, Inc.*, 2013 WL 6096794, at *6 (Sharp, J.); *Lisenbee v. FedEx Corp.*, 579 F. Supp. 2d 993, 1007 (M.D. Tenn. 2008) (granting a motion to transfer where "the Magistrate Judge [Joe B. Brown] believe[d] that access to proof and witnesses would be more easily accomplished where the Defendants have their principal places of business"). Here, Interline is not aware of any evidence related to Plaintiff's claim that may be located in the state of Tennessee. Aff. at ¶¶ 10-11. Plaintiff alleges in the Complaint that Interline has a distribution facility in Tennessee. Compl. at ¶ 16. That is true. Aff. at ¶ 11. It is also true that Interline has a smaller professional contractor showroom in Nashville. Aff. at ¶ 11. However, it is unlikely that a Toiler Connector from the distribution facility in La Vergne or professional contractor showroom in Nashville would have been sold directly to some contractor in Pennsylvania and installed in Plaintiff's home in Philadelphia. Aff. at ¶ 12. Interline maintains more than 60 distribution facilities in various regions across the United States. Aff. at ¶ 11. Based on the operations of Interline's distribution network, Plaintiff's Toilet Connector—assuming it was purchased from Interline— was more likely sourced through Interline's distribution facility in Moorestown, New Jersey,

---

[1] While this factor is admittedly less important due to modern technology, this Court has found that it weighed in a defendant's favor where a plaintiff identifies "no sources of proof" in her chosen forum. *Seyi-America, Inc.*, 2013 WL 6096794, at *6 (Sharp, J.). Plaintiff cannot identify sources of proof located in this District, as all relevant documents are kept, or at least accessible, at Interline's principal office in Jacksonville, Florida. Aff. at ¶ 11.

7

which is approximately 15 miles away from Philadelphia; in Levittown, Pennsylvania, which is approximately 25 miles away from Plaintiff's home in Philadelphia; or from some other closer distribution facility in the northeast. Aff. at ¶ 12.

Rather, virtually all of Interline's documents regarding the facts of this case will be found in the Middle District of Florida at Interline's headquarters and principal place of business in Jacksonville. Aff. at ¶ 10. Interline's Jacksonville office hosts all of the company's core operations. Aff. at ¶ 10. Thus, all documents related to, among other things, merchandising, global sourcing, marketing, distribution, consumer complaints, or records of prior failures of Interline products are kept at the Jacksonville office. Aff. at ¶ 10. Additionally, any records related to claims or issues involving the specific Toilet Connector product that Plaintiff or Plaintiff's contractor purchased would be found at the same office. Aff. at ¶ 10. Even if digital copies of documents exist, these documents would be accessed through Interline's computer servers that are located in Interline's Jacksonville office.[2] Aff. at ¶ 10.

Interline's business activities and the documents that are most relevant to this case are located in Interline's office in Jacksonville, Florida. Aff. at ¶ 9-10. Because most of the relevant evidence would be found in the Middle District of Florida, and no such evidence is located in the Middle District of Tennessee, this factor weighs heavily in favor of transferring this case to the Middle District of Florida.

---

[2] Moreover, as discussed in Section II.B, *supra*, a substantial number of former employees reside in the Middle District of Florida. To the extent those witnesses have documents in their possession relevant to this case, those documents would be accessible in the Middle District of Florida.

8

### D. Public Interest Factors Favor Transfer to the Middle District of Florida.

In addition to the private factors that weigh in favor of transferring this case to the Middle District of Florida, the public interest factors similarly support this result. Tennessee has no local interest in hearing this lawsuit. There are simply no facts giving rise to a local controversy, and thus the Middle District of Tennessee should have no interest in having the matter decided here.

This is not an issue of local concern, as all events relevant to Plaintiff's claim occurred outside the Middle District of Tennessee. It is highly improbable that Plaintiff or Plaintiff's contractor purchased Interline's product in Tennessee. It is also beyond dispute that any injuries suffered by Plaintiff occurred outside this state, and her lawsuit in no way relates to any alleged wrongdoing committed at either the distribution facility in La Vergne or the professional contractor showroom in Nashville. *See generally* Compl; Aff. at ¶ 12. Instead, Plaintiff alleges inadequate testing and improper labeling of products, which conduct—if true (which is denied)—would have been directed and carried out by Interline employees in Interline's Jacksonville office, who were primarily responsible for dealing with Interline's suppliers concerning these issues. Compl. at ¶¶ 25, 29-31, 52-53, 55; Aff. at ¶¶ 6-7, 9. It is, therefore, illogical and wasteful for a Tennessee court to adjudicate a dispute that has virtually nothing to do with Tennessee.

Furthermore, jury duty is a burden that should not be imposed upon the citizens of a community which has no relation to the litigation. *Nicol v. Koscinski*, 188 F.2d 537, 537-38 (6th Cir. 1951); *Cont'l First Fed., Inc. v. Watson Quality Ford, Inc.*, No. 3:08-0954, 2010 WL 1836808, at *3 (M.D. Tenn. 2010) ("[F]airness dictates that the action should be transferred, as it is unfair to the citizens of Tennessee to burden them with jury duty to resolve a dispute which

9

primarily involves citizens of other districts and events that occurred in other districts."). Because none of the operative facts occurred in this judicial district, and the Middle District of Tennessee has no particular local interest in the outcome of the case, transfer is appropriate. *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2008 WL 686213, at *2-4 (M.D. Tenn. Mar. 6, 2008).

Finally, although this is by no means a conclusive factor, some courts compare the average trial times and court congestion in the two forums at issue. *See Aegis Sciences Corp. v. Millennium Labs., Inc.*, No. 3:11-CV-00294, 2011 WL 3420642, at *2 (M.D. Tenn. Aug. 4, 2011) (Sharp, J.) ("Other relevant public interest concerns include the . . . practical issues of trial management [and] docket congestion."); *Azarm v. $1.00 Stores Servs., Inc.*, No. 3:08-1220, 2009 WL 1588668, at *8 n.4 (M.D. Tenn. June 5, 2009). In this case, the median time for a civil case to progress from filing to trial in the Middle District of Tennessee is 36.2 months, while the corresponding time in the Middle District of Florida is 24.7 months. *See* Admin. Office of the United States Courts, *Federal Court Management Statistics* (June 2014), *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx. Similarly, the median time for a civil case to progress from filing to disposition in the Middle District of Tennessee is 12.0 months, while the corresponding time for the Middle District of Florida is 7.7 months. *Id*. It appears, therefore, that this dispute may be resolved more quickly if litigated in the Middle District of Florida.

All of the public interest factors favor the transfer of this case to the Middle District of Florida. This is not a local controversy, and the Middle District of Tennessee has no particular interest in seeing this matter through to a resolution. The only apparent connection to Tennessee is that Interline has a single distribution facility in La Vergne and a smaller professional

10

contractor showroom in Nashville. However, these facilities are unrelated to Plaintiff's claims. Such a tenuous connection cannot justify expending valuable Court resources, particularly in this district that is more congested than the proposed transferee forum, the Middle District of Florida. Accordingly, the public interest factors all weigh heavily in favor of transfer to the Middle District of Florida.

### E. Plaintiff's Choice of Forum Is Not Controlling.

A plaintiff's choice of forum is "not sancrosanct," especially when a plaintiff has "little or no connection to the chosen forum." *Seyi-America, Inc.*, 2013 WL 6096794 at *6 (Sharp, J.). "In fact, where the chosen forum is not the home of the plaintiff, 'the normally applicable assumption that the forum choice is convenient' may carry 'significantly less weight.'" *Defenders of Wildlife v. Jewell*, No. 2:13-00039, 2013 WL 6179953, at *4 (M.D. Tenn. Nov. 26, 2013) (Sharp, J.) (citing *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 524 (6th Cir. 2010)). A plaintiff's choice of forum should be given even less deference "where the central facts of the lawsuit occurred outside the chosen forum." *Seyi-America, Inc.*, 2013 WL 6096794, at *6 (Sharp, J.); *Lisenbee*, 579 F. Supp. 2d at 1007.

Here, Plaintiff is not a resident of Tennessee, so her chosen forum should at first glance be given significantly less weight. Compl. at ¶ 13. Moreover, at second glance, the central facts underlying Plaintiff's claims have no connection whatsoever to this forum. Because Plaintiff filed this suit outside of her place of residence, hundreds of miles from where her injury occurred, and in a forum that lacks any meaningful relationship to the dispute, Plaintiff's choice of venue should not be given any deference.

### III. CONCLUSION

Because this action has no meaningful connection to this forum, Interline should not be forced to defend itself in the Middle District of Tennessee. Tennessee has no interest in having

11

the matter decided here, and no relevant events occurred in Tennessee. Moreover, litigating this case in Tennessee is immensely inconvenient, overly burdensome, and outright wasteful to the Court, the parties, and third-party witnesses.

The factors addressed herein militate overwhelmingly towards a determination that the appropriate venue for the resolution of this dispute is the Middle District of Florida, not the Middle District of Tennessee. The factors typically considered in ruling upon a transfer motion tip the scales heavily in favor of transfer. Indeed, <u>none</u> of the factors shift the balance toward Tennessee. Accordingly, Interline respectfully requests an order transferring this case to the Middle District of Florida.

Respectfully submitted,

LEWIS THOMASON

By: /s/ John R. Tarpley
    John R. Tarpley, BPR #9661
    424 Church Street, Suite 2500
    P.O. Box 198615
    Nashville, Tennessee 37219
    Telephone: (615) 259-1366
    Facsimile: (615) 259-1389
    jtarpley@lewisthomason.com


GREENBERG TRAURIG, P.A.


By: /s/ Hilarie Bass
    Hilarie Bass, Florida Bar No. 334243
    Mark A. Salky, Florida Bar No. 058221
    Timothy A. Kolaya, Florida Bar No. 056140
    333 S.E. 2nd Avenue, Suite 4400
    Miami, Florida  33131
    Telephone: (305) 579-0500
    Facsimile: (305) 579-0717
    bassh@gtlaw.com
    salkym@gtlaw.com
    kolayat@gtlaw.com


By: /s/ David O. Batista
    David O. Batista, Florida Bar No. 175803
    401 E Las Olas Blvd. Ste. 2000
    Fort Lauderdale, FL 33301-4223
    Telephone: (954) 765-0500
    Facsimile: (954) 765-1477
    batistad@gtlaw.com

    *Attorneys For Defendant, Interline Brands, Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this the 7th day of November, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Daniel E. Gustafson, Esq.
    Raina, Borrelli, Esq.
    Gustafson Gluek PLLC
    120 South Sixth Street , Suite 2600
    Minneapolis, MN 55402

    Simon Bahne Paris, Esq.
    Patrick Howard, Esq.
    Charles J. Kocher, Esq.
    Saltz, Mongeluzzi, Barrett & Bendesky, PC
    One Liberty Place, 52nd Floor
    1650 Market Street
    Philadelphia, PA 19103

    Donald L. Perelman, Esq.
    Gerald A. Dever, Esq.
    Fine, Kaplan and Black, P.C.
    1835 Market Street, 28th Floor
    Philadelphia, PA 19103

    Anthony D. Shapiro, Esq.
    Jeniphr Breckenridge, Esq.
    Hagens Berman Sobol Shapiro, LLP
    1918 Eighth Avenue, Suite 3300
    Seattle, WA 98101

    J. Gerard Stranch, IV, Esq.
    Seamus T. Kelly, Esq.
    Branstetter, Stranch & Jennings
    227 Second Avenue North, 4th Floor
    Nashville, TN 37201-1631

    Joseph J. Tabacco, Jr., Esq.
    Todd A. Seaver, Esq.
    Berman DeValerio
    One California Street, Suite 900
    San Francisco, CA 94111

                                    /s/ John R. Tarpley