# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JACQUELINE D. AJOSE, KATHY SMITH, SHARON KURTZ, PATRICIA EVERETT, JAMES L. BOYLAND, AND KATHY DUTTON, on behalf of themselves and those similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:14-cv-1707 |
| v. | ) ) | Judge Sharp |
| INTERLINE BRANDS, INC., | ) ) ) | Magistrate Joe Brown |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Interline Brand, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint, (Docket No. 93) ("Motion to Dismiss"), to which Plaintiffs have responded in opposition, (Docket No. 123) ("Opposition"), and Interline has replied, (Docket No. 126). For the reasons set forth below, Interline's Motion will be granted in part and denied in part.

## I.       Factual & Procedural Background[1]

In this class action lawsuit, six Named Plaintiffs seek to represent themselves and a class of others who are similarly situated. The Named Plaintiffs are Jaclyn Ajose of Pennsylvania, Kathy Smith of Colorado, Sharon Kurtz of Texas, Patricia Evett and Kathy Dutton of Arizona, and James L. Boyland of Florida. Interline is a direct marketer and distributor of a broad line of products, including plumbing supplies. Interline does not manufacture the products it sells but

---

[1] Unless stated otherwise, the following facts are drawn from Plaintiffs' First Amended Class Action Complaint ("FAC"), (Docket No. 81), and are taken as true for the purposes of this decision.

instead uses third-party manufacturers to provide it with the products it distributes in the United States. Among the products distributed by Interline is a DuraPro brand toilet connector ("Toilet Connector"), which is manufactured in China and which is the subject of this litigation. Prior to 2002, Interline sourced their toilet connectors from manufacturers in the United States. Interline thereafter purchased the Toilet Connectors from China, first via third-party supplier Lynx, Ltd. and later, after 2005, via third-party supplier MTD (USA) Corp. ("MTD"). MTD manufactured the Toilet Connectors based on Interline's design specifications. (FAC at ¶ 39; Docket No. 81-2, Ex. B to FAC, at 1).

Plaintiffs allege that Interline distributed "Toilet Connectors with uniformly defective plastic coupling nuts." (FAC at ¶ 3). Plaintiffs also allege that Interline knew of the defects in the Toilet Connectors yet failed to publicly disclose that the connectors carried a significant risk of causing "catastrophic water damage to property." (Id. at ¶ 31). According to Plaintiffs, the defective nuts caused leaks that allowed substantial water flow throughout Plaintiffs' homes. Because of this water flow, Plaintiffs experienced varying degrees of property damage that required them to tear down walls, (id. at ¶ 20), remove and replace flooring, (id. at ¶¶ 20, 24), and discard furniture, (id.). For example, Plaintiff Boyland had to vacate the premises, remove molding, drill holes in the walls, and use fans and dehumidifiers to dry the walls and carpets throughout his home. (Id. at ¶ 22). Similarly, Plaintiff Kurtz suffered damage to her hardwood floors, baseboards, and beds. (Id. at ¶ 18). Each Named Plaintiff experienced water damage and had to pay for repairs, either in the form of out-of-pocket expenses or insurance deductibles. The monetary cost of the Named Plaintiffs' damages ranges from $1,152 to upward of $7,600. (Id. at ¶¶ 14, 16, 18, 20, 22, 24).

The FAC does not say much about how the Named Plaintiffs came to possess the allegedly defective toilet connectors. Indeed, there are absolutely no allegations regarding how Plaintiffs Dutton, Boyland, and Ajose acquired the Toilet Connectors. In 2007, Plaintiff Evett "moved into a new construction home that contained a DuraPro Toilet Connector." (Id. at ¶ 20). The FAC notes that Toilet Connectors were "installed" in Plaintiff Smith's and Plaintiff Kurtz's homes in 2009 and 2004, respectively, but is silent as to who purchased or installed the connectors. (Id. at ¶¶ 16, 18).

The FAC does, however, allege in detail the precise design flaws that caused the Toilet Connectors to fail: "material selection (acetal, POM) combined with the use of a dense, rubber cone washer that does not relax under load, internal sharp transition points cut into the plastic material, and inadequate wall thickness." (Id. at ¶ 56). These flaws rendered the Toilet Connectors vulnerable to creep, the continued deformation or extension of a plastic component that is under a continuous load, (id. at ¶ 57), and crazing, the formation of thin cracks in plastic caused by notches at stress concentration points, (id. at ¶ 60). More specifically, the material selection, cone washer, and sharp transition points resulted in significant localized stress, which caused crazing in the Toilet Connectors' plastic coupling nuts. (Id. at ¶ 63). The crazing ultimately gave way to circumferential cracks in the walls of the coupling nuts, which, in turn, resulted in fracturing (i.e., failure). Plaintiffs also allege that Interline failed to warn users about the risks of applying too much torque to the Toilet Connectors' coupling nuts. Although the Toilet Connectors have a label, the label neither includes installation instructions nor warns of "the specific nature of the risks (i.e., spontaneous fracture), gravity of the risks (i.e., flooding) and how to avoid those risks (i.e., replacement after a reasonable useful life)." (Id. at ¶ 69).

Plaintiffs bring seven causes of action: a Strict Liability-Design Defect and Failure to Warn claim (Count I); a Declaratory Judgment Act claim (Count II); a Florida Deceptive and Unfair Trade Practices Act claim (Count III); a Colorado Consumer Protection Act claim (Count IV); an Unjust Enrichment claim (Count V); a Magnuson-Moss Consumer Products Warranties Act claim (Count VI); and a Breach of Implied Warranty of Merchantability claim (Count VII). They filed suit in August 2014 and amended their complaint in August of the following year. This Court denied Interline's request to transfer the case to the Middle District of Florida. (Docket No. 83). Interline now seeks to dismiss the bulk of Plaintiffs' claims. According to Interline, the FAC only meets the pleading standard with respect to portions of Count I. Otherwise, Interline asserts, the rest of Count I and all of Counts II through VII must be dismissed for failure to state a claim.

## II.    Choice of Law Issues

As a threshold matter, the Court will address the choice-of-law issues raised by Interline. Interline argues that for several of Plaintiffs' claims—namely, Counts I, V, VI, and VII—conflicts of law exist between the various states involved in this dispute (Arizona, Colorado, Florida, Pennsylvania, Tennessee, and Texas). For example, Interline contends that Texas disallows an independent claim for unjust enrichment while Tennessee permits such claims. Similarly, Interline notes that Texas, Colorado, and Pennsylvania allow implied warranty claims even in the absence of privity of contract while Tennessee does not. Because of the state law distinctions, Interline asks the Court to apply the law of the state of injury. Specifically, Interline ask the Court to "apply Pennsylvania law to Ajose's claims, Colorado law to Smith's claims, Texas law to Kurtz's claims, Arizona law to Evett's and Dutton's claims and Florida law to Boyland's claims." (Docket No. 94 at 8).

Plaintiffs respond by accusing Interline of improperly raising challenges to class certification at the motion to dismiss phase. They also contend that it is premature to conduct a choice-of-law analysis. They do not, however, address how the Court should address the fact that many of their claims rest on various state laws, some of which involve outcome-determinative distinctions even at the motion to dismiss stage. The Court agrees that the effect of state law distinctions on Plaintiffs' ability to certify a class is a question for another day. Still, the Court must determine the governing law for each claim before it may determine the adequacy of Plaintiffs' pleadings. Accordingly, a choice-of-law analysis is necessary here.

This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, meaning that the Court applies the procedural law of the forum state, including its choice of law rules, to determine the governing substantive law. See e.g., Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506 (6th Cir. 2003); AutoZone, Inc. v. Glidden Co., 737 F. Supp. 2d 936, 941 (W.D. Tenn. 2010). Tennessee has adopted the Second Restatement approach with respect to tort actions, which requires a court to apply the "law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 146 & 175 (1971)). Plaintiffs, who reside in five different states and seek to represent a nationwide class, bring state and common law claims. Under Tennessee's choice of law rules, the governing law turns on where the injury arose.

The Court will therefore adopt Interline's recommendation: To the extent there are conflicts of law, the Court will apply Pennsylvania law to Plaintiff Ajose's claims, Colorado law

to Plaintiff Smith's claims, Texas law to Plaintiff Kurtz's claims, Arizona law to Plaintiffs Evett's and Dutton's claims, and Florida law to Plaintiff Boyland's claims.[2]

## III. Motion to Dismiss Standard

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the Interline as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)).

In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth, Iqbal, 129 S. Ct. at 1950, and "a formulaic recitation of the elements of a cause of action will not do," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

## IV. Application

### A. Count I: Ajose's Strict Liability Claim

Count I of the FAC is a strict liability claim for design defect and failure to warn brought on behalf of the proposed damages classes. Interline invokes Pennsylvania's economic loss rule and argues for dismissal of the claim as it relates to Plaintiff Ajose. Pennsylvania's

---

[2] The Court will refer collectively to the five states in which Plaintiffs reside and were injured as the "Injury States."

interpretation of the economic loss rule disallows recovery under a strict liability theory where the only resulting damage is to the defective product itself. See Jones v. Gen. Motors Corp., 631 A.2d 665, 666 (1993); REM Coal Company v. Clark Equipment Company, et al., 563 A.2d 128, 134 (1989). An exception to this general rule, the "other property" exception, explains that recovery under strict liability is permissible when the damage goes beyond the defective product itself. This exception "prevents the dismissal of tort claims under the economic loss doctrine when a defective product causes personal injury or damage to *property other than the defective product itself*; in turn, only recovery as to the personal injuries and/or other property damage is permitted." Capricorn Power Co. v. Siemens Westinghouse Power Corp., 324 F. Supp. 2d 731, 738 (W.D. Pa. 2004) (emphasis added) (citing REM Coal Co. v. Clark Equip. Co., et al., 563 A.2d 128, 130-131 (Pa. 1989)).

Citing an inapposite negligence/tortious interference case, Aiken v. Baltimore & Ohio R. Co., 501 A.2d 277, 278 (1985), Interline asserts that because the damage at issue here is economic in nature, Plaintiff Ajose's claim must be dismissed. Interline additionally contends that the "other property" exception to the economic loss rule does not apply because Plaintiff Ajose has alleged neither the type nor the degree of injury she allegedly suffered due to the flooding she experienced. Plaintiffs argue that the "other property" exception does apply because even if the FAC does not precisely quantify the harm to Plaintiff Ajose's property, the allegations of property damage caused by "water running unabated through her home" satisfies the pleading standard. (FAC at ¶ 14). The Court agrees with Plaintiffs.

Plaintiff Ajose seeks to recover for harm the defective Toilet Connector caused to her property, not for harm to the Toilet Connector itself. The FAC alleges that the defective Toilet Connector caused flooding in Plaintiff Ajose's home, resulting in "out-of-pocket damages

including, but not limited to, payment of her property insurance deductible." (FAC at ¶ 14).
These damages are clearly distinct from damage to the Toilet Connector itself, meaning that
Plaintiff Ajose's strict liability claim fits squarely within the "other property" exception to
Pennsylvania's economic loss rule.  Interline does not otherwise seek dismissal of Count I.
Plaintiffs' strict liability claim therefore remains intact.

**B. Count II: Plaintiffs' Request for Declaratory Relief**

Plaintiffs' second cause of action seeks a declaratory judgment on behalf of the proposed
Rule 23(b)(2) equitable relief class.  More specifically, "Plaintiffs seek a declaration that the
Interline's Toilet Connectors with plastic coupling nut are defective in their workmanship,
material and labeling."  (FAC at ¶ 109).  Interline asserts that its liability will be necessarily
resolved during the course of this litigation, rendering declaratory relief redundant.  Moreover,
Interline contends that at this stage of the litigation, before class certification has been litigated, it
is premature to craft any classwide relief.  Plaintiffs respond that declaratory relief will resolve
"core liability issues" for those who have already experienced Toilet Connector failure and will
minimize avoidable loss for those who have yet to experience failure.  (Docket No. 123 at 6).

The Declaratory Judgment Act, 28 U.S.C. § 2201, is "an enabling Act, which confers
discretion on the courts rather than an absolute right upon the litigant."  Wilton v. Seven Falls
Co., 515 U.S. 277, 282 (1995).  "[D]istrict courts possess discretion in determining whether and
when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise
satisfies subject matter jurisdictional prerequisites."  Id. at 287.  Where subject matter
jurisdiction is solely based on diversity, federal law determines whether there is a controversy
before the Court within the purview of the Act and state law creates and determines the
substantive rights and duties that may vindicated through declaratory relief.  See St. Paul Fire

and Marine Ins. Co. v. Weiner, 606 F.2d 864, 867 (9th Cir. 1979); Hunt v. State Farm Mut. Auto. Ins. Co., 655 F. Supp. 284, 286 (D. Nev. 1987); MacMillan-Bloedel, Inc. v. Firemen's Ins. Co. of Newark, N.J., 558 F. Supp. 596, 598 (S.D. Ala. 1983).

The Sixth Circuit has articulated a five-factor test for determining when a district court should entertain requests for declaratory relief:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata';
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

AmSouth Bank v. Dale, 386 F.3d 763, 785 (6th Cir. 2004) (citation omitted). The Court will address each factor in turn.

Regarding the first factor, a declaration that the Toilet Connectors' coupling nuts are defective would not settle the controversy. Although such a declaration may establish elements of Plaintiffs' strict liability claim, Count I, it does little to advance their consumer protection claims (Counts III and IV) and their unjust enrichment claim (Count V). Neither would declaratory relief entirely do away with Plaintiffs' implied breach of warranty claims (Counts VI and VII). Put another way, even if Plaintiffs ultimately prove that they are entitled to declaratory relief, they will still need to prove many other elements and claims, all of which are part of a larger controversy.

That being said, declaratory relief would serve a useful purpose (the second Dale factor). In the context of products liability class action cases, injunctive relief classes under Rule 23(b)(2) typically seek a declaration that a product is defective so that relief can be easily pursued once the defect manifests itself or causes damages. See, e.g., Pella Corp. v. Saltzman,

606 F.3d 391, 392 (7th Cir. 2010) (affirming certification of a Rule 23(b)(2) class of owners whose Pella windows had not yet manifested the alleged design defect or been replaced). "In such cases, Rule 23(b)(3) class members are entitled to damages because the defect already manifested itself (assuming all other elements of a particular legal claim are established), while Rule 23(b)(2) class members are guaranteed damages if the defect ever manifests and causes harm (again, assuming all other elements of a particular legal claim are established)." Gonzalez v. Corning, No. 13-cv-1378, 2016 WL 1252988, at *77 (W.D. Pa. Mar. 31, 2016). The inclusion of an equitable relief class seeking declaratory relief accounts for the fact that not all individuals who own Toilet Connectors have already experienced damage.

The third Dale factor asks whether declaratory relief is being sought as a form of procedural fencing or to tee up res judicata claims. Plaintiffs correctly point out that without any evidence of an improper motive, courts are loathe to impute one or to find procedural fencing. See State Farm Fire & Cas. Co. v. Specialty Surgery Ctr., PLLC, No. 2:15-cv-26, 2015 WL 6696001, at *5 (M.D. Tenn. Nov. 3, 2015). Interline does not accuse Plaintiffs of seeking declaratory relief for an improper purpose and the Court does not believe that to be the case. Thus, the third factor does not affect the Court's analysis.

The fourth Dale factor is similarly inapplicable insofar as neither Party has identified any parallel state court proceedings. Absent any state court proceedings, the Court declines to speculate about friction with or encroachment on state court jurisdiction.

Finally, the fifth Dale factor asks whether there might be a better alternative remedy. This question should be cabined to whether a better remedy is available to the equitable relief class, as the declaratory relief is sought only on their behalf. As Interline points out numerous times in its briefing, the range of remedies available to that particular class of individuals is

circumscribed. Equitable relief is the most fitting rememdy available to individuals who own but have not yet experienced damage due to the Toilet Connectors. Declaratory relief would also promote judicial economy by facilitating their damages claims, should they arise, rather than leaving them to wait for flooding and then bring suit individually or petition to intervene in this action.

After considering the relevant factors, this Court will exercise its discretion to allow Plaintiffs' Declaratory Judgment Act claim to proceed.

### C. Count III: Plaintiffs' FDUTPA Claim

The third Cause of Action alleges violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"). FDUTPA makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla. Stat. § 501.204(1). The statute requires that Florida courts give "due consideration and great weight . . . to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act. . . ." Fla. Stat. § 501.204(2).

Plaintiffs allege that "Defendant's conduct in distributing, marketing and/or selling their Toilet Connectors that it knew was defective and that could—and likely would— spontaneously fail constitutes an unfair act in connection with Defendant's trade or commerce in connection with a consumer transaction." (FAC at ¶ 114). Interline advances four arguments for dismissing the FDUTPA claim: the FDUTPA claim is time-barred; Plaintiffs fail to plead the FDUTPA claim with sufficient particularity; Plaintiffs have not sufficiently alleged causation; and Plaintiffs base the FDUTPA claim on acts occurring outside of Florida.

*1. <u>The Location of the Wrongful Conduct</u>*

The Court begins by addressing Interline's fourth ground for dismissal, the location of the wrongful conduct. Interline argues that Plaintiffs have not sufficiently pleaded that the wrongful conduct they allege occurred in Florida. According to Interline, Plaintiffs' allegations that decisions regarding product sourcing and labeling occurred in Florida are too barebones and require resorting to guesswork. Plaintiffs respond by pointing out that it was Interline who first pointed to Florida as the locus of events. Plaintiffs also note that the language in the FAC regarding acts in Florida is lifted directly from Interline's admissions in this litigation. Finally, Plaintiffs concede that "only Plaintiff Boyland resides in Florida and has standing to assert the FDUTPA claim." (Docket No. 123 at 18).

The Court agrees that Plaintiff Boyland has standing under FDUTPA as an in-state consumer. The remaining Plaintiffs fail to allege acts occurring in the state of Florida. Florida courts have held that the FDUTPA exists for "the protection of in-state consumers," <u>Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz</u>, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999), and "protects non-Florida consumers only when the alleged wrongful conduct occurred within the State of Florida," <u>Stein v. Marquis Yachts, LLC</u>, No. 14-24756-CIV, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015) (collecting cases). For example, where the claim arises from the sale of products, FDUTPA applies only to sales within the state. <u>See</u> <u>T Stein v. Marquis Yachts, LLC</u>, No. 14-24756-CIV, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015).

Here, Plaintiffs allege deceptive practices relating to the distribution, marketing, and sales of the defective Toilet Connectors. They allege that "all of the offending conduct occurred predominantly or exclusively in Florida, including decisions regarding product sourcing and labeling decisions." (FAC at ¶ 117) (citing Docket No. 76 at 1). However, the FAC is devoid of

specific allegations regarding the marketing of the Toilet Connectors. Neither does the FAC allege where the non-Florida Plaintiffs purchased their Toilet Connectors. The FAC mentions distribution but does not limit distribution to Florida in any way. Indeed, it does quite the opposite: Plaintiffs allege that Interline has "68 distribution centers throughout the United States and Canada." (Id. at ¶ 26). Moreover, this Court has jurisdiction by virtue of a distribution warehouse in Nashville, Tennessee. These dearth of factual allegations regarding Florida marketing, distribution, and sales precludes the non-Florida Named Plaintiffs from adequately stating a claim under FDUTPA.

Accordingly, the Court reaches the same conclusion as the Parties and finds that only Plaintiff Boyland has stated a claim for relief under FDUTPA. The rest of the Court's FDUTPA analysis will therefore be limited to Plaintiff Boyland.

### 2. *Timeliness*

Regarding the timeliness of Plaintiff Boyland's FDUTPA claim, Interline argues that the Amended Complaint lacks the relevant date: the date of purchase of the Toilet Connectors. The FAC alleges that Plaintiff Boyland's Toilet Connector failed and caused water damage in 2015 but does not mention when Plaintiff Boyland purchased the Toilet Connector. Interline contends that under Florida law, the cause of action accrues upon purchase of a faulty product, not upon malfunction. Plaintiffs assert that the statute of limitations presents a factual question that is inappropriate for resolution at the motion to dismiss phase. Plaintiffs also rely on out-of-circuit authority for the proposition that Tennessee's, not Florida's, statute of limitations applies here.

The Court need not now determine which statute of limitations applies in order to resolve this Motion. Where it is "not 'apparent from the face of the complaint' that the claim is time-barred . . . the issue is one of fact that must be determined at a later stage of the litigation." In re

EveryWare Glob., Inc. Sec. Litig., No. 2:14-cv-01838, 2016 WL 1242689, at \*18 (S.D. Ohio Mar. 30, 2016) (citing Bishop v. Lucent Techs., Inc., 520 F.3d 516, 520 (6th Cir. 2008)).  The date Plaintiff Boyland purchased the Toilet Connectors is not apparent in the FAC.  Accordingly, the Court cannot now determine whether or not the FDUTPA claim is timely and, as such, the Court declines to dismiss the claim on this ground.

### 3.  *The Applicable Pleading Standard for Deceptive Acts under FDUTPA*

Interline next argues that Plaintiffs have failed to plead the FDUTPA claim with the specificity required under the heightened pleading standard of Rule 9(b).  More specifically, Interline argues that Plaintiffs failed to satisfy the heightened pleading standard of Rule 9(b) because they failed to plead the "who, what, when, and where" of the representations on which they base their FDUTPA claim.  (Docket No. 94 at 14).  Plaintiffs argue that the heightened pleading standard of Rule 9(b) does not apply to the FDUTPA claim because it is based not on fraud but on unfair practices.

Typically, Rule 9(b)'s heightened pleading standard applies only to those FDUTPA claims which sound in fraud.  See Hill v. Hoover Co., 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012) (applying 9(b)'s standard to some but not all of a plaintiff's FDUTPA claims); Jovine v. Abbott Laboratories, Inc., 795 F. Supp. 2d 1331 (S.D. Fla. 2011).  Plaintiffs' FDUTPA claim alleges that "Defendant's conduct in distributing, marketing and/or selling their Toilet Connectors that it knew was defective and that could—and likely would— spontaneously fail constitutes an unfair act in connection with Interline's trade or commerce in connection with a consumer transaction."  (FAC at ¶ 114).  Because the FDUTPA claim is premised on unfair acts and not on fraud, Plaintiffs need not satisfy Rule 9(b)'s heightened standard.[3]

---

[3] Elsewhere in their Opposition, Plaintiffs confusingly use the word "fraud" with respect to their FDUTPA claim. (Docket No. 123 at 19, n.18) ("The analysis of the proper statute of limitations for this claim must be derived from

### 4. *Causation*

Of course, Plaintiffs must still satisfy the plausibility pleading standard set forth in Section III, *supra*. In order to state a claim under the FDUTPA, a plaintiff must plead the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d Dist. Ct. App. 2006); see also Virgilio v. Ryland Group, Inc., 680 F.3d 1329, n.25 (11th Cir. 2012). Interline asserts that Plaintiff Boyland's FDUTPA claim fails to state causation and that therefore the claim must be dismissed. Plaintiffs have alleged that absent Interline's unfair practices by Interline, they would not have purchased the toilet connectors. Absent the toilet connectors, Plaintiffs allege, they would not have suffered property damage. Plaintiffs have therefore sufficiently alleged that Interline's conduct caused Plaintiff Boyland's injury as required by the FDUTPA.

The Court will dismiss the FDUTPA claim insofar as it is brought by the Non-Florida Plaintiffs. Plaintiff Boyland has, however, adequately stated a claim for relief and his FDUTPA claim survives.

### D. Count IV: Plaintiffs' CCPA Claim

Plaintiffs next allege violations of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.* ("CCPA"). Specifically, Plaintiffs allege violations of Section 6-1-105(r) for failure to "clearly and conspicuously disclose the nature and extent of the toilet connector's limited warranty, as well as material conditions or limitations in the guarantee," (FAC at ¶ 120) and Section 7-1-105(u) for failure to disclose known material information with the intent to induce the consumer to purchase the toilet connector, (id. at ¶ 122). Interline argues that this claim fails

---

the gravamen of the claim, which is fraud under the FDUTPA."). While this portion of the Opposition is poorly worded, the Court understands this use of the term "fraud" to refer to fraud in a colloquial sense. When it comes to what claims Plaintiffs actually assert under the FDUTPA, the Court is guided by the language in Count III of the Amended Complaint, (FAC at ¶¶ 111-17), which does not mention fraud.

because Plaintiffs have not adequately alleged a public impact as required by the CCPA and because Plaintiffs have not pleaded their CCPA claim with particularity, as required by Rule 9(b). Although the Court finds that Plaintiffs have adequately pleaded public impact, the Court agrees with Interline that Plaintiffs have failed to plead the remaining elements of their CCPA claim with particularity.

Unlike Plainitffs' FDUTPA claim, Rule 9(b)'s heightened pleading standard applies to at least some portion of Plaintiffs' CCPA claim. Claims under the CCPA present a somewhat unique pleading situation insofar as the different elements of a claim are subject to different pleading standards. To state a claim under the CCPA the Plaintiff must allege five elements: "(i) that the Defendant engaged in an unfair or deceptive trade practice; (ii) the practice occurred in the course of the Defendant's business; (iii) the practice significantly impacts the public as actual or potential consumers of the Defendant's goods or services; (iv) the Plaintiff suffered injury to a legally-protected interest; and (v) the challenged practice caused the Plaintiff's injury." Tara Woods Ltd. P'ship v. Fannie Mae, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010); see also Brodeur v. Am. Home Assurance Co., 169 P.3d 139, 155 (Colo. 2007). Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard with respect to elements (i), (ii), (iv), and (v) but not element (iii), public impact. Two Moms & a Toy, LLC v. Int'l Playthings, LLC, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (citing HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc., 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011)); see also D.R. Horton, Inc.-Denver v. The Travelers Indem. Co. of Am., No. 10-cv-02826, 2012 WL 527204, at *4 (D. Colo. Feb. 16, 2012) (citing Duran v. Clover Club Foods Co., 616 F. Supp. 790 (D. Colo. 1985)).

When evaluating public impact the Court looks at (1) the number of consumers directly affected by challenged practice; (2) the relative sophistication and bargaining power of

consumers affected by challenged practice; and (3) evidence that challenged practice has previously impacted other consumers or has significant potential to do so in the future. Christensen v. CitiMortgage, Inc., No. 12-cv-02600, 2015 WL 1757076, at *11 (D. Colo. Apr. 14, 2015). Plaintiffs have named at least six consumers already affected by the alleged trade practices: the Named Plaintiffs. Plaintiffs have also asserted that between 2002 and 2013 Interline sold 11 million of the toilet connectors. According to Plaintiffs, Interline continued to sell the defective connectors even after internally acknowledging the defect as early as 2007. Moreover, Plaintiffs allege that Interline concealed the defect, which would negate any sophistication or bargaining power on the part of the purchaser. Taken together, these allegations satisfy the pleading requirement for the public impact element of a CCPA claim.

Turning to the other elements of the CCPA claim, the Court remains mindful of the fact that Plaintiffs primarily allege deceptive omissions, not affirmative misstatements. The CCPA claim rests on Interline's alleged failure to include certain information in the warranty and to disclose known material information. Plaintiffs are correct in noting that the Rule(b) "standard is modified somewhat because of inherent differences between omissions and active assertions." Martinez v. Nash Finch Co., 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (citing S.E.C. v. Nacchio, 438 F. Supp. 2d 1266, 1277 (D. Colo. 2006)). The modified standard is not, however, without teeth. CCPA claims arising from omissions "must sufficiently identify 'the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.'" Dawson v. Litton Loan Servicing, LP, No. 12-cv-01334, 2013 WL 1283848, at *8 (D. Colo. Mar. 28, 2013) (citing Martinez, 886 F. Supp. 2d at 1216).

Plaintiffs allege that the Toilet Connectors' limited warranty included in Interline's catalog was inconspicuous to the actual users of Toilet Connectors, property owners, and that the CCPA requires Interline "to clearly and conspicuously disclose the nature and extent of the" limited warranty. (FAC at ¶¶ 120, 121). Plaintiffs do not, however, explain when, where, or how Interline should have disclosed the limited nature of the warranty to property owners. Plaintiffs also say Interline violated the CCPA by "failing to disclose material information concerning the Toilet Connectors" that was known to Interline at the time of sale and withheld in order to induce purchase. (Id. at ¶ 122). Again, however, Plaintiffs do not provide any information about when, where, or how Interline should have communicated this information to the property owners, who primarily came into possession of the Toilet Connectors via third parties. Even taking into account the modified Rule 9(b) pleading standard for material omissions, Plaintiffs' allegations are insufficient. The CCPA claim will therefore be dismissed.

### E. Count V: Unjust Enrichment

Count V of the FAC asserts a claim for unjust enrichment. This cause of action is premised on state law and is among those of Plaintiffs' claims that raise conflicts-of-law issues. Plaintiffs seek disgorgement of the "profits, benefits, and other compensation" Interline received from Toilet Connector purchasers "as a result of its wrongful conduct." (FAC at ¶ 130). According to Plaintiffs, "Defendant's retention of the economic benefit it received violates the fundamental principles of justice, equity and good conscience, because Interline knowingly sold Plaintiffs and the Class members a defective product." (Id. at ¶ 129).

Generally speaking, a claim for unjust enrichment lies where there exists "a defendant who is enriched at the expense of the plaintiff" and who "accept[s] and retain[s] the ill-gotten benefit." In re Processed Egg Products Antitrust Litig., 851 F. Supp. 2d 867, 912 (E.D. Pa.

2012) (citing <u>In re Flonase</u>, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010); <u>See also</u> <u>Trustmark Ins.</u>

<u>Co. v. Bank One</u>, 48 P.3d 485, 491 (Ariz. Ct. App. 2002); <u>Shands Teaching Hosp. & Clinics, Inc.</u>

<u>v. Beech St. Corp.</u>, 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005); RESTATEMENT (FIRST) OF

RESTITUTION § 1; RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011)).

The Court pauses to note that the FAC does not include any allegations that Plaintiffs

purchased the Toilet Connectors directly from Interline. Indeed, there is a complete dearth of

factual allegations regarding a benefit conferred on Interline. <u>See</u> Section I, *supra*. The Court is

left to intuit that third parties either purchased them on Plaintiffs' behalf or that the Toilet

Connectors were already installed when Plaintiffs purchased their homes. This pleading

deficiency alone would seem to thwart Plaintiffs' unjust enrichment. Regardless, all five of the

Injury States have distinctions that mandate dismissal of Count V.

### 1. *Arizona, Pennsylvania, and Florida: Benefit of the Bargain*

Plaintiffs' unjust enrichment claim fails in three of the Injury States because Plaintiffs

have not adequately shown that the enrichment at issue here, profits derived from the sale of the

Toilet Connectors, was "unjust." More precisely, all of the Plaintiffs enjoyed the benefit of the

bargain, properly functioning Toilet Connectors, for a number of years before the coupling nuts

fractured and the connectors failed. In Arizona, Pennsylvania, and Florida, this usage of the

Toilet Connectors precludes a claim for unjust enrichment.

Multiple Pennsylvania courts have looked at claims for unjust enrichment stemming from

the use of a consumer product and found that where the purchaser was able to use the product for

its intended purpose, the purchaser could not then bring an unjust enrichment claim. <u>See, e.g.</u>,

<u>Tatum v. Takeda Pharm. North America, Inc.</u>, 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19, 2012)

(finding that the plaintiff's claim that the Defendants were aware of the risks of a pharmaceutical

drug but chose not to disclose them failed to state a claim for unjust enrichment because there was no allegation that the Defendants failed to provide the drugs once they were purchased by the Plaintiffs); In re Avandia Mktg., Sales Practices and Prod. Liab. Litig., 2011 WL 4007908, at * 2 (E.D. Pa. Sept.7, 2011) (finding that the plaintiff's allegations that the product at issue was not safe, and that Defendant knew it was not safe and promoted it anyway, failed to state a claim for unjust enrichment where the plaintiff received the product for which he paid).

Similarly, Interline correctly explains the holding in Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (applying Florida law). There, the plaintiffs brought an unjust enrichment claim against a pharmaceutical company for false and misleading advertising. But because the plaintiffs had actually derived the stated benefit of the medication, lower cholesterol, they had received the benefit of the bargain and could not claim unjust enrichment. Id. Arizona courts have likewise found that plaintiffs cannot recover for unjust enrichment where they actually receive the bargained-for item. See Brooks v. Valley Nat. Bank, 548 P.2d 1166, 1171 (1976) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return.").

None of the case law that Plaintiffs cite on this topic overcomes the fact that they each received the benefit of their bargain for some time—years—before the Toilet Connectors failed. The gravamen of their complaint is not that the connectors never worked. Instead, Plaintiffs argue that prolonged usage caused failure, which in turn caused property damage. To the extent Plaintiffs can even be said to have conferred a benefit on Interline, it does not appear that the benefit was unjust. Count V, insofar as it asserts an unjust enrichment claim on behalf of Plaintiffs Ajose, Evett, Dutton, and Boyland, must be dismissed.

Arizona law also mandates dismissal because Plaintiffs have an adequate remedy at law. Arizona courts consider the absence of an adequate remedy at law to be an element of a prima facie claim of unjust enrichment that must be pleaded in the complaint. Wang Elec., Inc. v. Smoke Tree Resort, LLC, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (setting forth the elements of an unjust enrichment claim); Covino v. Forrest, No. 1 CA-CV-13-0433, 2014 WL 3030111, at *12 (Ariz. Ct. App. July 3, 2014) (citations and internal quotation marks omitted). Colorado courts have similarly dismissed unjust enrichment claims when they were pleaded alongside other causes of action that demonstrated the availability of an adequate remedy at law. See Harris Grp. v. Robinson, 209 P.3d 1188, 1205-06 (Colo. App. 2009) (finding that, as an equitable remedy, unjust enrichment is not available where there is "a plain, speedy, and adequate remedy at law"); Francis v. Mead Johnson & Co., No. 1:10-cv-00701, 2010 WL 5313540, at *9 (D. Colo. Dec. 17, 2010) (dismissing an unjust enrichment that arose from the same set of facts as a CCPA claim).

In Arizona, when a plaintiff brings multiple claims, this pleading requirement may be met where the complaint makes plain that the claim of unjust enrichment is a claim in the alternative. In re Processed Egg Products Antitrust Litig., 851 F. Supp. 2d 867, 918 (E.D. Pa. 2012) (applying Arizona law to dismiss an unjust enrichment claim). Colorado courts, on the other hand, reject as superfluous this form of pleading in the alternative when "the success of Plaintiff's unjust enrichment claim depends directly upon the success of her [other] claims." See Mead Johnson & Co., 2010 WL 5313540, at *9.

Here, the FAC neither asserts the absence of an adequate remedy at law nor clarifies that the unjust enrichment claim is meant to apply only "[t]o the extent legal remedies do not sufficiently accomplish disgorgement of Interlines' illegal profit." In re Processed Egg Products,

851 F. Supp. 2d at 918.  Moreover, the success of the unjust enrichment claim hinges on the success of Plaintiffs' other claims.  Plaintiffs attempt to get around this pleading issue by arguing that whether an adequate remedy at law exists is a factual matter not ripe for disposition at the motion to dismiss phase.  However, the above-cited case law indicates that the availability of an adequate remedy may properly be addressed at the pleading stage.  Arizona law (again) and Colorado law require dismissal of the unjust enrichment claims.

### 3.  *Texas: Unjust Enrichment Is Not an Independent Cause of Action*

Interline argues that Texas law requires dismissal of the unjust enrichment claim because Texas law bars disallows a litigant from bringing a separate claim for unjust enrichment.  This Court's review of Texas case law reveals a growing conflict in how Texas courts treat complaints that plead unjust enrichment as a separate cause of action.  Compare HECI Exploration Co. v. Neel, 982 S.W.2d 881, 891 (Tex. 1998) (implicitly treating unjust enrichment as a separate cause of action), and Pepi Corp. v. Galliford, 254 S.W.3d 457, 460 (Tex. App. 2007) ("Unjust enrichment is an independent cause of action."), with Lilani v. Noorali, No. H–09–2617, 2011 WL 13667, at *11 (S.D. Tex. Jan. 3, 2011) (observing that most Texas appellate courts do not view unjust enrichment as an independent cause of action but treat it as an element of restitution); and Davis v. OneWest Bank N.A., No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App. Apr. 9, 2015), review denied (Nov. 20, 2015) (gathering cases and finding that an unjust enrichment claim could not be independently brought).

The Texas Supreme Court has not squarely addressed this issue.  However, the Court o Appeals for the Fifth District of Texas at Dallas, which encompasses the district where Plaintiff Kurtz resides, is among those courts that have held that unjust enrichment does not constitute an independent claim.  Walker v. Cotter Properties, Inc., 181 S.W.3d 895, 900 (Tex. App. 2006)

("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."), rev'd on other grounds, 240 S.W.3d 869 (Tex. 2007).  It appears, therefore, that Plaintiff Kurtz would be unable to maintain a separate claim for unjust enrichment were she pursuing her claims in state court.  For that reason, this Court finds dismissal of the Texas unjust enrichment claim to be the most appropriate outcome.

In sum, the law in all five of the Injury States supports dismissing Count V of the FAC.

**F.  Count VII: Breach of the Implied Warranty of Merchantability**

Count VII of the FAC asserts a claim for breach of implied warranty of merchantability. Like the unjust enrichment claim, this cause of action arises under state law and the Injury States have varying approaches to the claim.  Accordingly, the Court must again undertake state-specific analyses.

*1.  Privity Requirement: Arizona and Florida*

Interline argues that Arizona and Florida law require dismissal of the claim for breach of implied warranty of merchantability because Plaintiffs lack privity with Interline.  Plaintiffs do not contend they are in privity with Interline, nor could they, as the allegations in the FAC indicate that Plaintiffs came to own the Toilet Connectors indirectly rather than purchasing them directly from Interline.  Plaintiffs instead respond by noting that even if the lack of privity might usually preclude a breach of warranty claim, their claim falls within well-established exceptions to the privity requirement.  The Court agrees with Interline that the lack of privity precludes the breach of warranty claim in Arizona and Florida.

Arizona law makes clear that privity must exist in order for a plaintiff to recover for breach of implied warranty. See Flory v. Silvercrest Indus., Inc., 633 P.2d 383, 387 (Ariz. 1981); Eck v. Helene Curtis Indus. Inc., 453 P.2d 366 (Ariz. Ct. App. 1969); Bailey v. Montgomery Ward & Co., 431 P.2d 108 (1967). The same holds true for Florida. See Mesa v. BMW of North America, LLC, 904 So. 2d 450, 458 (Fla. App. 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); see also Bailey v. Monaco Coach Corp., 168 F. App'x 893, 894 (11th Cir. 2006); Baker v. Danek Medical, 35 F. Supp. 2d 875, 878 (N.D. Fla. 1998); Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 38 (Fla. 1988).

In arguing that Plaintiffs fall within an exception to this general rule, Plaintiffs cite to several cases interpreting California law and to Florida case law detailing the contours of the exception for direct contact between manufacturers and end users. For obvious reasons, the California cases do little to advance Plaintiffs' claim. Neither does the cited line of Florida cases save the claim. Florida law finds the privity requirement satisfied "where the manufacturer's representative had direct contacts with the purchaser." Carnival Corp. v. Rolls-Royce PLC, No. 08-23318-CIV-SEITZ, 2009 WL 3861450, at *3 (S.D. Fla. Nov. 17, 2009). Plaintiffs have not alleged any contact with Interline whatsoever, let alone significant contacts, nor have they made such allegations about Interline's representatives. Absent any such allegations, they cannot invoke this exception. Because Plaintiffs are not in privity with Interline, Arizona and Florida law bar their claim for breach of implied warranty or merchantability.

2. *Pennsylvania, and Texas: Manifest Defect*

Interline also seeks dismissal of Count VII on the ground that the claim improperly relies on prospective failure. Specifically, Interline asserts that Plaintiffs wrongly seek redress based

"on possible future injuries to unnamed putative class members who own Toilet Connectors allegedly prone to failure."  (Docket No. 126 at 10).  Plaintiffs argue that the defect alleged here is "already manifest in all systems" in the form of continual crazing.  (Docket No. 123 at 27).

Texas and Pennsylvania courts have indeed found that a claim for breach of implied warranty requires that the defect "either have manifested during the product's normal use or [that] such manifestation must be inevitable when the defective feature of the product is used." Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 854 (Tex. App. 2005) (collecting cases); see also Zwiercan v. Gen. Motors Corp., No. 3235-1999, 2002 WL 1472335, at *3 (Pa. Com. Pl. May 22, 2002) ("The key to determining the viability of the Plaintiff's breach of implied warranty of merchantability claim is whether a manifestation of the breaching defect is required for a claim to accrue."); Grant v. Bridgestone Firestone Inc., 57 Pa. D. & C.4th 72 (Pa. Com. Pl. 2002). Accordingly, Plaintiffs must plead a manifest defect in order to state a claim for breach of implied warranty of merchantability.

Notably, Count VII is brought on behalf of the proposed Rule 23(b)(3) damages classes, (see FAC at p. 34, Seventh Cause of Action), which are expressly limited to those individuals who "own or reside in a structure where Interline's Toilet Connector's coupling nut failed and caused damage to property," (FAC at ¶¶ 84, 85).  Thus, the implied warranty of merchantability claim is, by definition, cabined to those who have already experienced the alleged defect.  There is nothing prospective about this claim and Interline does not advance any other arguments for dismissal.

In sum, the breach of implied warranty claim fails in Arizona and Florida because the FAC lacks allegations going to a necessary element of the claim in those states, privity.  The claim otherwise survives.

### G. Count VI: Plaintiffs' MMWA Claim

Lastly, Plaintiffs seek relief for breach of implied warranty of merchantability under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"). The MMWA provides a civil claim for relief for consumers who are damaged by a supplier or warrantor's failure to comply with its obligations under a written or implied warranty or under the Act in issuing such a warranty. 15 U.S.C. § 2310(d)(1). In order to state a claim under the Act, a plaintiff must demonstrate that "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." Temple v. Fleetwood Enters., Inc., 133 F. App'x. 254, 268 (6th Cir. 2005).

Crucially, the MMWA defines "implied warranty" as "an implied warranty arising under State law (as modified by sections 15 U.S.C. §§ 2308 and 2304(a) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Courts have held that Congress intended the Act's implied warranty provisions to be interpreted in accordance with the relevant state's law, except as expressly modified by the Act. See Walsh v. Ford Motor Co., 807 F.2d 1000, 1013-14 (D.C. Cir. 1986); Taliaferro v. Samsung Telecomm. Am., LLC, 2012 WL 169704, *10 (N.D. Tex. Jan. 19, 2012) (holding that the MMWA "does not provide an independent basis for liability, but instead provides a federal cause of action for state law express and implied warranty claims." ). Thus, a plaintiff must state a viable state law claim for breach of implied warranty in order to state a claim under the MMWA.

This Court has already partially dismissed Plaintiffs' breach of implied warranty of merchantability claim because Plaintiffs failed to allege privity as required by Arizona and Florida. That same pleading defect precludes a MMWA claim for the Arizona and Florida

Plaintiffs. Accordingly, the MMWA claim will be dismissed to the same extent that the Court has dismissed Count VII.

**V.** <u>**Conclusion**</u>

For the above-stated reasons, the Court will grant in part and deny in part Defendant Interline's Motion to Dismiss. Plaintiffs' Strict Liability and Declaratory Judgment Act claims remain wholly intact. The FDUTPA claim will be dismissed as to all Plaintiffs except Plaintiff Boyland, whose FDUTPA claim survives. The CCPA and Unjust Enrichment claims will be dismissed. The implied breach of warranty claims (Counts VI and VII) will be dismissed as to the Arizona and Florida Plaintiffs, but will survive for the Colorado, Texas, and Pennsylvania Plaintiffs. A separate order will enter.

_Kevin H. Sharp_

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE
