UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JACQUELYN D. AJOSE, et al.,        )
                           )
        Plaintiffs,      )
                           )     No. 3:14-cv-1707
v.                            )     Judge Sharp
                           )     Magistrate Judge Brown
INTERLINE BRANDS, INC.,      )
                           )
        Defendant.      )

## <u>ORDER</u>

This matter is before the Court on the Plaintiffs' motion to compel production of four categories of documents withheld by the Defendant on claims of attorney-client privilege and the work-product doctrine. (Doc. 145). The Plaintiffs' motion to compel is **GRANTED IN PART** and **DENIED IN PART**.

## I.        BACKGROUND

Through a class action complaint, the Plaintiffs seek relief for damages caused by allegedly defective DuraPro brand toilet connectors distributed by Defendant Interline Brands, Inc. ("Interline") beginning in 2002. (Docs. 1, 81). The toilet connectors were allegedly supplied to Interline by Linx, Ltd ("Linx") and MTD (USA) Corp. ("MTD"). (Doc. 81, pp. 11-12 ¶¶ 33, 38). The original complaint was filed on August 20, 2014. (Doc. 1). During discovery, Interline produced nearly 14,000 documents and withheld over 4,700 relevant documents. (Doc. 146, p. 1). The Plaintiffs take issue with the large number of documents withheld and seek an order compelling production of four categories of documents. (Doc. 145). The documents are identified by two privilege logs. (Docs. 151-1, 151-2). Interline later gave the Plaintiffs a chart

identifying the name and title of individuals in the privilege logs (Doc. 149-4)[1] and a declaration from Interline's Quality Assurance Manager, Joseph Cangelosi III ("Cangelosi declaration") (Doc. 149-7). The adequacy of Interline's privilege log (Doc. 151-1) was first addressed by the parties in June 2016. (Doc. 134, p. 3). The issue was again raised in a telephone conference with the Magistrate Judge in October 2016. (Doc. 141, p. 2). To resolve this issue, the Magistrate Judge granted the parties leave to brief the issue and requested that the challenged items be submitted for *in camera* review. (Doc. 141, p. 2). The parties have submitted their respective briefs (Docs. 145, 146, 150), and Interline has submitted materials for this Court's *in camera* review. The matter is ripe for decision.

## II.    LEGAL STANDARD

Discovery may be compelled by a court order upon motion and notice to the parties and affected persons. Fed. R. Civ. P. 37(a)(1), (a)(3)(B); Local Rule 37.01. Where a party seeks to withhold otherwise discoverable information under a claim of privilege or the work-product doctrine, the withholding party must expressly assert the claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The withholding party may present this information in the form of a privilege log, but Rule 26(b)(5)(A)(ii) does not explicitly require a privilege log so long as the necessary information is conveyed. *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 191 (M.D. Tenn. 2014). The party withholding items under a claim of privilege or the work-product doctrine bears the burden of establishing the item should be withheld. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (citations omitted); *Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005) (citation omitted).

---

[1] The document submitted to the Court only contains every other page of this chart.

Where information has been withheld under claims of privilege in a federal question case, the presiding court applies federal common law to determine whether privilege applies. Fed. R. Evid. 501. The Sixth Circuit Court of Appeals set forth the following elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citation omitted).

The federal work-product doctrine, codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery "(1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for another party or its representative." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (internal quotations omitted) (quoting Fed. R. Civ. P. 26(b)(3)). As this Court has recognized, the work-product doctrine "does not intend to bar discovery of facts, but rather 'the work product of the lawyer' where disclosure of the documents reveals counsel's 'mental impressions, personal beliefs,' and reflections of what counsel believes to be important." *John B. v. Goetz*, 879 F. Supp. 2d 787, 896 (M.D. Tenn. 2010) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).

The court determines whether a document or tangible item was prepared in anticipation of litigation or for trial by considering two factors: (1) whether the anticipated litigation or trial was the "driving force" for preparing the item as opposed to creating the item for an ordinary business purpose and (2) whether the party's subjective anticipation was objectively reasonable. *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 595). To establish the party anticipated litigation, the party seeking to withhold the materials may submit proof "such as affidavits made on personal knowledge, depositions, or answers to

interrogatories." *Roxworthy*, 457 F.3d at 597 (citations omitted). Conclusory statements will not satisfy this burden. *Id.* (citations omitted). Materials protected by the work-product doctrine may nevertheless be ordered disclosed where the requesting party establishes it has a substantial need for the materials and cannot obtain equivalent information through other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A). Even where disclosure is ordered, however, the court must protect against disclosure of opinion work product. *Id.* 26(b)(3)(B).

Though privilege is generally waived by disclosure of a privileged communication to a third party, exceptions to this rule exist where: (1) multiple clients are represented by the same attorney in the same matter; (2) defendants share a common defense and share information to effect this defense (the "joint-defense" privilege); or (3) two or more clients share a common interest and exchange legal advice in support of this interest (the "common-interest" privilege). *Reed*, 134 F.3d at 357 (describing the common-interest privilege); *Goetz*, 879 F. Supp. 2d at 897-98 (explaining the joint-defense privilege and common-interest privilege); *Jones v. Nissan N. Am., Inc.*, No. 3:07-0645, 2008 WL 5114652, at *3 (M.D. Tenn. Dec. 2, 2008) (citations omitted) (explaining that an employer and its worker's compensation carrier shared a common interest in relation to worker's compensation claim); *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219-20 (W.D. Ky. 2006) (citations omitted).

### III.     ANALYSIS

The Plaintiffs challenge Interline's assertion of privilege as to the following categories of documents: "(1) documents related to Interline's adjusting of claims for property damage; (2) non-privileged communications between non-legal Interline employees and agents; (3) spreadsheets compiling factual data; and (4) drawings related to the design of the defective

connectors." (Doc. 145). Several documents from each category were provided for *in camera* review. The categories and the documents submitted *in camera* are addressed in turn.

## A. CLAIM FILES

The Plaintiffs first argue that Interline has improperly invoked the work-product doctrine and attorney-client privilege to withhold documents related to Interline's adjusting of claims for property damage. (Doc. 146, pp. 1, 6). Claims received by Interline are divided into three categories: (1) direct claims from customers, (2) subrogation demands, and (3) notices of litigation. (Doc. 149-1, p. 4 of 7). Importantly for purposes of this analysis, the Plaintiffs only seek production of documents related to direct claims and subrogation demands, not notices of litigation. (Doc. 146, p. 8). The parties have not disputed the relevance of these documents.

### 1. APPLICATION OF THE WORK-PRODUCT DOCTRINE TO CLAIM FILES

The first issue presented is whether files created in response to direct claims and subrogation demands may be withheld as work product. The answer to this question turns on whether the files were prepared in anticipation of litigation. *See In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (citation omitted) ("Making coverage decisions is part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist Professionals Direct in deciding coverage, then they are not protected by the work-product doctrine.").

Interline cites *Young v. Chapman*, No. 3:14-CV-666-JHM-CHL, 2016 WL 1717226 (W.D. Ky. Apr. 28, 2016) for the proposition that insurance claim files are discoverable where the withholding party has not established that they were prepared in anticipation of litigation. At issue in *Young* was the production of a statement made by a driver to his insurance provider after an automobile accident. *Id.* at *4, 6-7. As the *Young* court observed, the Sixth Circuit has rejected the assumption that every investigation into an insurance claim is done "in anticipation

of litigation" because making coverage decisions is an ordinary business matter for insurers. *Id.* at *6 (citing *In re Professionals Direct Ins. Co.*, 578 F.3d at 439). The *Young* court found the driver's statement to the insurer was not made in anticipation of litigation even though (1) four cars and multiple individuals were involved in the accident; (2) the accident received media coverage; and (3) the insurance representative gave sworn testimony that at the time the statement was taken the insurance company believed litigation may ensue. *Id.* at *7. The following statement supplied by the insurance representative was deemed conclusory: "[b]ased on the facts of the accident, apparently involving multiple collisions between several vehicles, Amerisure retained Specialty Claims . . . and obtained the recorded statement . . . due to its belief that the accident may result in litigation." *Id.* (alterations in original). The court additionally noted that the claim was treated like other claims and found that a police report supported a finding that another driver was at fault which suggested litigation was less likely. *Id.*

As the Plaintiffs note, the *Young* decision is supported by other district court decisions within this circuit. *See Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-CV-857-TBR-LLK, 2015 WL 4483991, at *4 (W.D. Ky. July 22, 2015) (finding that the plaintiff had not established that documents prepared by an insurance broker in the ordinary course of business qualified as work product); *Cowie v. State Farm Fire & Cas. Co.*, No. 1:07-CV-63, 2007 WL 2077619, at *2 (E.D. Tenn. July 17, 2007) (explaining that insurance investigatory materials may be work product if they were primarily created in anticipation of litigation and the fact-intensive inquiry should focus on who prepared the documents, the nature of the documents, and when the documents were created); *Flagstar Bank v. Fed. Ins. Co.*, No. 05-CV-70950-DT, 2006 WL 6651780, at *5-6 (E.D. Mich. Aug. 21, 2006) (explaining that claims materials were not

privileged where they were prepared by attorneys because a claims investigation was required in the ordinary course of business).

The Plaintiffs contend that Interline is self-insured because it is responsible for a $75,000 claim deductible and adjusts claims in the ordinary course of business. (Doc. 146, p. 7). Interline rejects the label "self-insured" because it maintains insurance through third-party carriers. (Doc. 150, p. 8 & n.4). Interestingly, both sides cite Interline's second amended complaint in another lawsuit for their competing definitions. *See* Amended Complaint for Declaratory Relief and Damages, *Interline Brands, Inc. v. AIG Specialty Ins. Co.*, No. 3:14-cv-00426 (M.D. Fla. filed April 14, 2014) (Doc. No. 40). In the unrelated amended complaint, Interline alleged it maintained various liability policies with third-party insurers. *Id.* at 3-8. Having taken out insurance policies with other entities, Interline is not "self-insured." *See Self-Insurance*, <u>Black's Law Dictionary</u> (10th ed. 2014) (defining self-insurance as "A plan under which a business maintains its own special fund to cover any loss. Unlike other forms of insurance, there is no contract with an insurance company."). Like a self-insured company, however, Interline has internal procedures for resolving claims.

Arguing it is not self-insured, Interline distinguishes this case from an order on a motion to compel in *Trabakoolas v. Watts Water Technologies, Inc.*, No. 3:12-cv-01172 (N.D. Cal. dismissed Aug. 5, 2014) (Doc. No. 210).[2] While Interline is correct that the withholding party in *Trabakoolas* was described as self-insured, the court's order compelling production of documents was based on the fact that the party used an in-house team to investigate and adjust claims concerning failed toilet connectors in the ordinary course of business. *Id.* The court found it inconsequential that a risk management department be required to report to an attorney. *Id.* at 2. To establish an anticipation of litigation, the court explained, the withholding party "must

---

[2] A copy of this order is filed at docket entry 149-5.

identify a trigger event," which "could include the involvement of legal counsel on behalf of the claimant, or the denial of a claim." *Id.* Because the withholding party had not identified a specific reason for anticipating litigation when claims were reviewed, the work-product doctrine did not apply. *Id.* at 2-3.

Whether Interline is self-insured is not dispositive. The overall question is whether Interline created the withheld claims files in the ordinary course of business or whether these files were created "because of" an objectively reasonable subjective anticipation of litigation. As already stated, Interline divides its claims into three categories: (1) direct claims from customers, (2) subrogation demands, and (3) notices of litigation. (Doc. 149-1, p. 4 of 7). Ordinarily Interline account representatives handle direct customer claims and act as agents or brokers between customers and suppliers. (Doc. 149-1, p. 4 of 7). In this case, the supplier would be either Linx or MTD. (Doc. 149-1, p. 4 of 7). Subrogation demands and notices of litigation are directed to the legal department after Mr. Cangelosi makes product identifications. (Doc. 149-1, p. 4 of 7).

To establish that this procedure changed due to a reasonable anticipation of litigation, Interline submitted the Cangelosi declaration. (Doc. 149-7). Mr. Cangelosi explained that before 2007 or 2008, Interline had only received a few claims regarding DuraPro brand toilet connectors and those claims were handled by Interline's Quality Assurance Team. (Doc. 149-7 ¶ 6). Interline noticed an increasing number of DuraPro brand toilet connector claims in 2007 or 2008. (Doc. 149-7 ¶ 7). Based on the "slight increase in the number of claims" and the filing of an individual lawsuit, Interline and its General Counsel's office were alerted to a potential threat of litigation. (Doc. 149-7 ¶ 8). Interline's General Counsel's office directed that DuraPro brand toilet connector claims be handled by the legal department which solicited Mr. Cangelosi's input.

(Doc. 149-7 ¶ 9). The legal department continued to handle these claims as the threat of litigation grew in the following years. (Doc. 149-7 ¶ 10). Mr. Cangelosi stated that the "'driving force' behind Interline's General Counsel's office's unique preparation of claims documents regarding the DuraPro Brand Toilet Connectors between around 2007 and 2012 was the threat of litigation." (Doc. 149-7 ¶ 13).

From the parties' representations, the Magistrate Judge finds that in the ordinary course of business claim files would be created by Interline quality assurance employees or in-house counsel upon receipt of direct claims and subrogation demands. The fact that direct claim files were prepared by in-house counsel once Interline was alerted to a potential threat of litigation does not detract from the fact that this was standard practice. To the extent that Interline's in-house attorneys went beyond the investigative and negotiation functions formerly performed by the quality assurance employees upon receipt of direct claims, those efforts may constitute work product. Additionally, if the in-house attorneys' treatment of subrogation demands changed based on an anticipation of litigation, that factor may lead to a finding of work-product protection. The information submitted to the Court is not enough to reach these conclusions.

Beyond asserting that in-house counsel had a "unique" method of preparing claim documents and that the threat litigation was the "driving force" for these unidentified methods, the Cangelosi declaration does not provide specific or detailed information required for the undersigned to determine that the direct claim and subrogation demand files were prepared outside the ordinary course of business. Additionally, Interline claims it subjectively anticipated litigation upon a "slight increase in the number of claims" and the filing of an individual lawsuit. (Doc. 149-7 ¶ 8). Receipt of summons may reasonably trigger an anticipation of litigation for related claims. As of the date of this order, Interline has not provided the requisite details to

evaluate the "individual lawsuit," such as the date of service. Interline has not met its burden of establishing that the withheld direct claim files and subrogation demand files were prepared in anticipation of litigation. Until this is established, the Magistrate Judge cannot conclude, categorically, that the direct claim files and subrogation demand files constitute protected work product.

The following documents were submitted for *in camera* review:

- ESI-0000019 (Log Entry 18) – **PRIVILEGED**

  o This is an email from Chuck Roche at Linx to Mark Allen and copied to two Linx email accounts on August 5, 2014, titled "Re: Watts Taizhou Shida Claims." It is withheld as an attorney-client communication and/or work product "regarding indemnification/joint defense/common interest for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 1).

  o Mark Allen is a Global Sourcing Director at Interline. (Doc. 149-4, p. 5).

  o This document is properly withheld under the work-product doctrine and attorney-client privilege. Legal strategies are solicited through this email. Privilege is not waived by disclosure to Linx employees pursuant to the common-interest privilege.

- ESI-0000080 (Log Entry 72) – **NOT PRIVILEGED**

  o This document is described as "Wequp to MTD Comparison Photos.pdf" created on June 28, 2013. It is withheld as work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 4).

  o The Cangelosi declaration states this entry "contains Interline's own photographs regarding a toilet connector that was the subject of an active claim." (Doc. 149-7 ¶ 12).

  o This nine-page document consists of pictures of various connectors. The privilege log explanation does not distinguish between ordinary claims handling and preparing materials in anticipation of litigation. Likewise, the Cangelosi declaration explains these photographs were taken in response to a claim, not in an anticipation of litigation. Interline has not satisfied its burden of establishing work-product protection.

- ESI-0001420 (Log Entry 1164) – **NOT PRIVILEGED**

  - This is an email from Vickie Coughlin to Joe Cangelosi on May 31, 2012, titled "Confidential: FW: State Farm a.s.o. Castro (water claim)." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 50).

  - The Cangelosi declaration states this document is a communication between legal personnel and himself involving legal issues with the DuraPro brand toilet connectors. (Doc. 149-7 ¶ 11).

  - Vickie Coughlin is a Senior Paralegal at Interline. (Doc. 149-4, p. 7).

  - This one-page email is not privileged. The Rule 30(b)(6) deposition of Interline revealed that Mr. Cangelosi makes product identifications for complaints sent to Interline's in-house counsel in the ordinary course of business. (Doc. 149-1, p. 4 of 7). In this email, Ms. Coughlin requests that Mr. Cangelosi identify a product and review an expert report regarding a claim. The privilege log description of the document, the Cangelosi declaration, and the contents of this email do not suggest that an anticipation of litigation as opposed to an ordinary business purpose was the driving force behind Ms. Coughlin's request. Additionally, the descriptions of this document do not identify a basis for withholding this document under the attorney-client privilege. Interline's in-house legal department processed claims on Interline's behalf at the time this email was sent. From the context of this email, it appears that Ms. Coughlin seeks Mr. Cangelosi's input in a business capacity.

- ESI-0004388 (Log Entry 3509) – **NOT PRIVILEGED**

  - This is an email involving Joe Cangelosi dated May 11, 2010, titled "E.L. Ross Claim." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 140).

  - The Cangelosi declaration states this document is a communication between legal personnel and himself involving legal issues with the DuraPro brand toilet connectors. (Doc. 149-7 ¶ 11).

  - This email is not privileged for the same reasons as ESI-0001420.

- ESI-0005262 (Log Entry 4048) – **NOT PRIVILEGED**

  - This is an email from Vickie Coughlin to Joe Cangelosi on January 26, 2012, titled "FW: Chubb a.s.o. Robuck (new claim)." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 160).

- The Cangelosi declaration states this document is a communication between legal personnel and himself involving legal issues with the DuraPro brand toilet connectors. (Doc. 149-7 ¶ 11).

- This email is not privileged for the same reasons as ESI-0001420.

## 2. APPLICATION OF THE ATTORNEY-CLIENT PRIVILEGE TO CLAIM FILES

The Plaintiffs next argue that Interline may not withhold claim files as privileged attorney-client communications merely because these business records were reviewed by in-house counsel. (Doc. 146, p. 12). The Plaintiffs complain that Interline's privilege logs do not identify whether claims files were reviewed by attorneys in their capacity as counsel as opposed to in a business capacity. (Doc. 146, p. 13).

The attorney-client privilege is limited to legal advice and does not extend to purely business advice. *Curtis v. Alcoa, Inc.*, No. 3:06-CV-448, 2009 WL 838232, at *2 (E.D. Tenn. Mar. 27, 2009) (citations omitted). Where in-house counsel provides both business and legal advice, courts look to the hat worn by the attorney during the communication. *Goetz*, 879 F. Supp. 2d at 894-95 (citations omitted) ("[I]f the lawyer acted as a business advisor or agent, then the information is not privileged.").

Application of the attorney-client privilege, as the parties have recognized, is a fact-intensive inquiry that must be applied document-by-document. The Magistrate Judge makes no findings as to the application of the attorney-client privilege to claims documents in general.

The following documents were submitted for *in camera* review:

- ESI-0000009 (Log Entry 9) – **NOT PRIVILEGED**

  - This is an email from Joe Cangelosi to Dave Serrano and copied to Mark Allen on January 15, 2007, titled "RE: Linx Claims." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors; Attorney-client communication and/or work product regarding indemnification/joint

defense/common interest for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 1).

   o  In the email thread, Dave Serrano is identified as the Vice President of Finance and Corporate Controller of Interline.

   o  This email thread is not privileged. A paralegal is involved in the email thread, but the paralegal seeks information regarding identification of a connector. No legal advice is requested or dispensed in this thread. Interline has also not established that this email thread was created in anticipation of litigation as opposed to the ordinary claims handling process.

- ESI-0000260 (Log Entry 205) – **HAS BEEN PRODUCED**

   o  Interline states it produced this document on September 19, 2016. (Doc. 150, p. 10).

- ESI-0002895 (Log Entry 2456) – **HAS BEEN PRODUCED**

   o  Interline states it produced this document on receipt of the instant motion to compel. (Doc. 150, p. 10 n.8).

- ESI-0002996 (Log Entry 2527) – **HAS BEEN PRODUCED**

   o  Interline states it produced this document on September 19, 2016. (Doc. 150, p. 10).

- ESI-0005203 (Log Entry 3992) – **NOT PRIVILEGED**

   o  This is an email from Joe Cangelosi to Vickie Coughlin dated January 14, 2013, titled "State Farm a.s.o. Allen, Johnny (water loss claim)." It is withheld as an attorney-client communication "regarding ongoing litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 158).

   o  This email is not privileged for the same reasons as ESI-0001420. Though the privilege log description for this document states the communication concerns ongoing litigation, the litigation is not identified, and it is not shown how this document differs from a product identification performed in the ordinary course of business.

## B. COMMUNICATIONS BETWEEN NON-LEGAL EMPLOYEES AND AGENTS

The Plaintiffs next claim that Interline improperly withheld communications based on the attorney-client privilege where no lawyer was part of the conversation and the privilege log does

not indicate that the communications involved legal advice. (Doc. 146, pp. 2, 14). In addition, the Plaintiffs complain that the Cangelosi declaration is conclusory and does not support assertions of work-product protection as to these documents. (Doc. 146, pp. 16-17).

Interline defends its privilege designations with the Cangelosi declaration which broadly states that these documents "contain[] either information prepared in anticipation of litigation or information relaying or seeking legal advice." (Doc. 149-7 ¶ 14). Interline explains that communications between Interline and MTD and between Interline and Linx are properly withheld because the entities share a common interest in defending against the Plaintiffs' claims. (Doc. 150, pp. 12-13).

In the corporate context, the attorney-client privilege may extend to communications between employees that convey legal advice given by an attorney to the corporation. *Broessel*, 238 F.R.D. at 219 (citing *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976)). Thus while it is possible that communications between non-legal individuals may be privileged, the withholding party must identify through a privilege log or through other means why the communication is privileged. *Sid Mike 99, L.L.C. v. Suntrust Bank*, No. 2:07-CV-02453-STADKV, 2009 WL 3255209, at *5 (W.D. Tenn. Oct. 6, 2009) (citing Fed. R. Civ. P. 26(b)(5)(A) and finding that the withholding party's privilege log and affidavit did not show that the attorney-client privilege applied to communications between two non-lawyers). Application of the work-product doctrine does not change in this instance because the doctrine extends to documents created by or for the party or the party's representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A).

Again, due to the fact-intensive inquiry required to determine whether a claim of privilege is appropriately lodged, the Magistrate Judge declines to make a categorical ruling as to

this set of documents. Reviewing the documents submitted *in camera*, the Magistrate Judge

notes that the Plaintiffs correctly highlighted communications where no lawyer was part of the

conversation and the privilege log does not indicate that the communications involved provision

of legal advice. *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring a withholding party to provide

sufficient explanation to allow the opposing party to assess a claim of privilege).

The following documents were submitted for *in camera* review:

- ESI-0000179 (Log Entry 145) – **PRIVILEGED**

  - This is an email from Zheng Chen to Mark Allen dated October 24, 2011, titled "FW: Tafel (Claim No. 683-416086): Interline Tender of Defense & Indemnity to MTD (2nd Request)." It is withheld as an attorney-client communication and/or work product "regarding indemnification/joint defense/common interest for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 8).

  - This document is appropriately withheld as opinion work product. The email exchange contains counsel's mental impressions regarding indemnification and the potential for a joint defense. Disclosure of this email thread to MTD has not waived privilege due to the common-interest privilege.

- ESI-0000784 (Log Entry 594) – **PRIVILEGED**

  - This is an email from Joe Cangelosi to Mark Allen dated April 22, 2014, titled "FW: MTD Connectors." It is withheld as an attorney-client communication and work product "regarding redesign of the DuraPro brand toilet connectors." (Doc. 151-2, p. 28).

  - This document is appropriately withheld under the attorney-client privilege. Through the first email in this chain, Mark Allen conveys the contents of a privileged communication to other Interline employees. Depending on when Interline can establish it reasonably anticipated litigation, this document may also constitute work product.

- ESI-0001004 (Log Entry 788) – **NOT PRIVILEGED**

  - This is an email from Mark Allen to Joe Cangelosi dated March 16, 2010, titled "FW: Don Brown photos." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 36).

- This email thread is not privileged for the same reasons as ESI-0001420. Mr. Cangelosi is asked to identify a product which, according to the Rule 30(b)(6) deposition of Interline, occurred in the ordinary course of business. The privilege log description and text of the email thread do not establish that this document was prepared in anticipation of litigation as opposed to an ordinary business purpose. Additionally, no legal advice is sought or received in this email thread.

- **ESI-0001013 (Log Entry 797) – SHOULD BE REDACTED**

  - This is an email from Joe Cangelosi to Claire Coverdell dated June 22, 2011, titled "FW: Re:Re: (USAA) Howard Alexander." It is withheld as an attorney-client communication and/or work product "regarding indemnification for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 36).

  - From the privilege log description, it is difficult to assess Interline's claims of privilege. Upon review of the document, the Magistrate Judge concludes that the most recent email in the email thread, sent by Claire Coverdell to Joe Cangelosi on June 22, 2011 at 7:53:24 pm, may be withheld under the attorney-client privilege. This particular email may be redacted. The remaining emails in the thread are not privileged as they were sent to third parties without an identified joint-defense or common-interest privilege.

- **ESI-0002917 (Log Entry 2473) – HAS BEEN PRODUCED**

  - Interline states it produced this document upon receipt of the instant motion to compel. (Doc. 150, p. 10 n.8).

- **ESI-0003721 (Log Entry 3158) – NOT PRIVILEGED**

  - This is an email from Ashley Potvin at Linx to Carolyn Morris at Interline and copied to Mark Allen and Joe Cangelosi. It is dated March 23, 2011 and titled "FW: IBI Claim 000216-2010- Insurance claim for Weaver Plumbing & Electric." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors; Attorney-client communication and/or work product regarding indemnification/joint defense/common interest for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 127).

  - This email thread is not privileged. The conversation concerns the processing of a claim. Interline has not identified how this email thread deviates from the ordinary process of handling claims or that this email thread was created in anticipation of litigation. No attorney is identified in the exchange, and no legal advice is sought or given. A

paralegal is copied on the email thread, but that alone does not make the communication privileged.

- ESI-0000270 (Log Entry 215) – **PRIVILEGED**

  o This is an email from Mark Allen to Vickie Coughlin dated April 29, 2014, titled "Start/Stop Order Dates for MTD water connectors." It is withheld as an attorney-client communication and work product "regarding re-design orders of the DuraPro brand toilet connectors." (Doc. 151-2, p. 12).

  o Reviewing this document, the Magistrate Judge finds it falls within the attorney-client privilege. The text of the communication reveals that Vickie Coughlin is acting on behalf of Interline's in-house attorney when she requests information from Mark Allen. Depending on when Interline can establish it reasonably anticipated litigation, this document may also constitute work product.

- ESI-0000408 (Log Entry 304) – **PRIVILEGED**

  o This is an email from Vickie Coughlin to Mark Allen dated November 15, 2012 titled "FW: Connector Claim-Wilson." It is withheld as an attorney-client communication and/or work product "regarding indemnification/joint defense/common interest for claims and/or litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 16).

  o From the text of this email thread, it is reasonable to conclude that that this communication was submitted to Ms. Coughlin, a paralegal, for the purpose of obtaining legal advice. Depending on when Interline can establish it reasonably anticipated litigation, this document may also constitute work product.

- ESI-0000775 (Log Entry 585) – **NOT PRIVILEGED**

  o This is an email from Vickie Coughlin to Joe Cangelosi dated March 19, 2012, titled "Confidential: FW: Allstate a.s.o. Hernandez, Y. (water claim)." It is withheld as an attorney-client communication and work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 28).

  o This email thread is not privileged for the same reasons as ESI-0001420.

## C. SPREADSHEETS

Third, the Plaintiffs argue that spreadsheets compiling factual data have been improperly withheld because the privilege logs do not show that the spreadsheets were created in anticipation of litigation. (Doc. 146, pp. 2, 18). Rather, the Plaintiffs contend the spreadsheets contain ordinary business information that the Plaintiffs cannot obtain from other sources. (Doc. 146, pp. 2, 18, 20).

Interline cites the Cangelosi declaration in support of the claim that the spreadsheets are work product. (Doc. 150, pp. 14-15). The Cangelosi declaration states that these spreadsheets "were all created by or at the direction of Interline's General Counsel's office, regarding ongoing claims and litigation. The spreadsheets contain information relating to subrogation, indemnification, and other issues regarding claims and litigation involving the DuraPro Brand Toilet Connectors." (Doc. 149-7 ¶¶ 15-16). Additionally, Interline states it has already produced 847 spreadsheets including a spreadsheet detailed all claims involving the toilet connectors at issue. (Doc. 150, p. 15). Interline argues that the Plaintiffs do not have a substantial need for this information because it has already been produced with the exception of counsel's mental impressions. (Doc. 150, p. 17).

In reviewing these spreadsheets, the work-product doctrine and attorney-client privilege apply as previously discussed. The Magistrate Judge recognizes that the compilation of data into a spreadsheet in anticipation of litigation may reveal counsel's mental impressions or theories. Likewise, spreadsheets may contain privileged communications. These detail-specific doctrines will not be applied categorically. Interline nevertheless bears the burden of establishing that privilege is properly asserted. Mr. Cangelosi's assertion that these spreadsheets were created

regarding ongoing *claims* and *litigation* does not clearly identify which spreadsheets were

created in anticipation of litigation as opposed to the ordinary claims handling process.

The following documents were submitted for *in camera* review:

- ESI-0000006 (Log Entry 6) – **NOT PRIVILEGED**

    o This spreadsheet is dated January 31, 2006 and is titled "LinxClaims.013106.xls." It is withheld as work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 1).

    o The privilege log description and Cangelosi declaration do not contain the specific details required to establish work product protection. The creator of the spreadsheet is not identified, and Interline does not explain how the creation of this document is different from work done regarding ordinary claims assessments. Additionally, this document was created before Interline transferred its claims handling process to its in-house legal team.

- ESI-0000074 (Log Entry 68) – **PRIVILEGED**

    o This is a spreadsheet dated February 14, 2014 and titled "New Jersey (Stutman) Totals 2.14.14.xlsx." It is withheld as work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 4).

    o From the privilege log and Cangelosi declaration, it is difficult to assess the claim of privilege for this document which was created before the instant lawsuit was filed. However, upon review of the document, the Magistrate Judge finds it is reasonably withheld as work product.

- ESI-0002752 (Log Entry 2367) – **NOT PRIVILEGED**

    o This is an email from Joe Cangelosi to Merry Holton and copied to Carolyn Morris and Patrick Dussinger. Each individual is associated with Interline. The email is dated June 2, 2010 and titled "FW: Product Liability Spreadsheet." It is withheld as work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 96).

    o The privilege log and Cangelosi declaration do not establish that this document was created in anticipation of litigation instead of in the ordinary course of business.

- ESI-0005311 (Log Entry 4089) – **PRIVILEGED**[3]

    o This is an email from Claire Coverdell to Joe Cangelosi dated April 13, 2010 titled "FW: More discovery questions." It is withheld as an attorney-client communication and work product "regarding ongoing litigation involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 162).

    o Privilege is reasonably asserted over this document. The communication concerns Interline's efforts to respond to discovery questions.

- ESI-0005312 (Log Entry 4090) – **NOT PRIVILEGED**

    o This is a spreadsheet dated April 13, 2010 titled "Water Connector Approval Requirements (VERIFY).xls." It is withheld as work product "regarding claims involving the DuraPro brand toilet connectors." (Doc. 151-2, p. 162).

    o The privilege log and declaration do not establish who created this spreadsheet or that it was created in anticipation of litigation as opposed to an ordinary business practice. Though this document is apparently discussed in ESI-0005311 as a potentially responsive document to a discovery request, that alone does not render this document privileged.

- ESI-0005968 (Log Entry 4619) – **PRIVILEGED**

    o This is a spreadsheet dated July 16, 2014, titled "DuraPro Closet Connector Lifetime Volume 2007 Thru 7.15.2014.xlsx." It is withheld as work product "regarding shipments the [sic] DuraPro brand toilet connectors." (Doc. 151-2, p. 182).

    o This five-page spreadsheet lists, by month, the numbers of different connector models shipped between December 2007 and July 2014. According to the privilege log, the document was created after the instant lawsuit was filed. This factor makes it more reasonable that the current litigation was the driving force for the creation of this document. Upon review of the document, the Magistrate Judge concludes it contains fact work product, not opinion work product. Interline states it has already produced the factual information contained in the spreadsheets at issue to the Plaintiffs. (Doc. 150, p. 16). As the Plaintiffs have obtained the equivalent information through other means, Log Entry 4619 need not be produced.

---

[3] The Plaintiffs did not challenge this privilege designation in their motion to compel. Interline independently submitted this document for *in camera* review and explained that ESI-0005312 is an attachment to this document.

**D. DESIGN DRAWINGS**

Last, the Plaintiffs seek to compel production of drawings and product identification guides related to the design of the toilet connectors. (Doc. 146, pp. 2, 21). The Plaintiffs argue that no other drawings are available and that there is no indication these drawings were created at the direction of counsel in anticipation of litigation. (Doc. 146, pp. 2, 21). Even if these documents were privileged, argue the Plaintiffs, privilege was waived when Mr. Cangelosi testified as to counsel's purpose for creating these drawings. (Doc. 146, p. 22).

Through a Rule 30(b)(6) deposition, Interline testified that the closet supply line identification guide solely contains factual observations made by Mr. Cangelosi. (Doc. 149-1, p. 3 of 7). The deposition revealed that Mike Agliata, a former senior in-house counsel, did not contribute to the content of this guide. (Doc. 149-1, p. 3 of 7). At the request of counsel, Mr. Cangelosi drew a design for a coupling nut in 2003 and 2008. (Doc. 149-1, p. 3 of 7). These drawings did not reflect any input from counsel. (Doc. 149-1, p. 3 of 7). Mr. Cangelosi testified that Mike Agliata requested the drawings to ensure consistent product identifications. (Doc. 149-1, p. 7 of 7).

Interline argues that the documents referenced in the Plaintiffs' motion were all prepared after October 2008 which was after the toilet connectors at issue were manufactured. (Doc. 150, p. 17). According to Interline, these post-2008 documents were created at the request of Interline's counsel in order to develop a legal strategy to respond to claims in litigation and prospective claims. (Doc. 150, pp. 17-18). Interline argues the Plaintiffs have no substantial need for these drawings because the Plaintiffs are able to create their own drawings. (Doc. 150, pp. 18-19). Last, Interline argues that privilege was not waived during the Rule 30(b)(6) deposition because the substance of the communications was not disclosed. (Doc. 150, pp. 19-20). The

Cangelosi declaration states that these documents "are identical, or similar in all material respects, to the documents included in Interline's prior privilege log." (Doc. 149-7 ¶ 17).

As with the previous categories of withheld documents challenged, the Magistrate Judge recognizes that the work-product doctrine and attorney-client privilege may be appropriately asserted as to design drawings done in anticipation of litigation or that contain legal advice. To satisfy Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, the withholding party must, however, sufficiently explain the grounds for asserting privilege.

The following documents were submitted for *in camera* review:

- ESI-0000039 (Log Entry 38) – **HAS BEEN PRODUCED**

  o Interline states it produced this document upon receipt of the instant motion to compel. (Doc. 150, p. 10 n.8).

- ESI-0000772 (Log Entry 582); ESI-0005500 (Log Entry 4265); – **NOT PRIVILEGED**

  o These entries consist of "[d]rawings of three iterations of the toilet connectors Interline distributed between 2001 and 2008; prepared by Joe Cangelosi at the direction of Michael Agliata, Esq., General Counsel for Interline, for the purpose of responding to specific claims involving allegedly defective Toilet Connectors." It is dated March 1, 2012, titled "DuraPro Closet Connector Nut & Ferrule Configuration Confidential.pdf," and is withheld as an attorney-client communication and as work product. (Doc. 151-2, pp. 28, 168).

  o From the description provided in the privilege log and the Cangelosi declaration, the undersigned cannot conclude that the elements of the attorney-client privilege or work product doctrine are satisfied. No legal advice sought or received. Though the privilege log states the drawings were created to respond to claims about allegedly defective toilet connectors, this does not necessarily distinguish between ordinary claims handling and work done in anticipation of litigation. At the time the drawings were created, Interline's in-house legal team was handling claims. It has already been established that Mr. Cangelosi identified products in claims sent to the legal department. Creating a set of drawings to assist product identification would further that business purpose.

- ESI-0000887 (Log Entry 693) – **NOT PRIVILEGED**

  o This entry is dated October 27, 2009, and was withheld as an attorney-client communication and as work product. It is titled "IBI Closet Nut Identifier (10.09.2008).pdf" and is described as "'Premier & DuraPro Plastic Closet Nut Supplier Identification Guide;' drawings of various iterations of the toilet connectors Interline distributed between 2001 and 2008; prepared by Joe Cangelosi at the direction of Michael Agliata, Esq. General Counsel for Interline, for the purpose of responding to specific claims involving allegedly defective Toilet Connectors." (Doc. 151-2, p. 32).

  o The description provided in the privilege log and the Cangelosi affidavit does not establish that legal advice was sought or received. The description additionally does not distinguish the preparation of this material in the ordinary course of claims investigation as opposed to in anticipation of litigation.

- ESI-0003239 (Log Entry 2725) – **HAS BEEN PRODUCED**

  o Interline states it produced this document upon receipt of the instant motion to compel. (Doc. 150, p. 10 n.8).

### IV.   CONCLUSION

As provided herein, the Plaintiffs' motion to compel (Doc. 145) is **GRANTED IN PART** and **DENIED IN PART**. Interline **SHALL PRODUCE** the non-privileged documents reviewed *in camera* to the Plaintiffs within **seven (7)** days.

The Magistrate Judge declines to make categorical rulings as to the propriety of withholding the four categories of documents identified by the Plaintiffs. The attorney-client privilege and work-product doctrine could readily apply to documents within these broad categories. As discussed herein, Interline would be well-served by providing more details supporting its alleged anticipation of litigation for materials withheld as work product. The dual function performed by Interline's in-house counsel makes it even more important to provide sufficient facts to separate work done in the ordinary course of business as opposed to work done

in anticipation of litigation. Additionally, with respect to communications between non-lawyers, claims of privilege must contain sufficient detail to explain the basis for invoking privilege.

As the withholding party, Interline bears the burden of providing sufficient information for the Plaintiffs to assess Interline's claims of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A). With respect to the four categories of documents discussed herein, Interline is **GRANTED twenty-eight (28) days** to supplement its claims of privilege based on the guidance provided herein. To the extent these claims of privilege are not supplemented, the materials should be turned over to the Plaintiffs. Interline may supplement its privilege assertions through various means, such as a non-conclusory declaration or affidavit or an amended privilege log. Although no objection was filed to the Cangelosi declaration, the Magistrate Judge notes that the declaration is unsworn. Any supplemental declaration from Mr. Cangelosi should be made under oath.

It is so **ORDERED** this 23rd day of November, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge